Decree affirmed, and appeal dismissed at the costs of appellants.

---

## APPEAL OF JOHN E. DuBOIS.
## [ESTATE OF JOHN DuBOIS.]

FROM THE DECREE OF THE ORPHANS' COURT OF CLEARFIELD COUNTY.

Argued April 16, 1888—Decided October 1, 1888.

Where, in a conveyance or transfer of property during the lifetime of the owner, the manifest effect of conditions, covenants and stipulations in the deed are such as to clothe the grantee with a naked legal title, liable to be defeated at any time by the powers reserved to the grantor, or in case the grantor should die before the grantee, the right of the state to the collateral inheritance tax or duty under § 1, act of April 7, 1826, 9 Sm. L. 146, is not defeated thereby.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 11 January Term 1888, Sup. Ct.

On December 14, 1886, John E. DuBois, in his own right as owner, and as executor of the will of John DuBois, deceased, filed his appeal in the Orphans' Court from the appraisement

Opinion of Court below.

and assessment of the collateral inheritance tax upon the estate of said deceased.

The hearing of the appeal was had on July 25, 1887, and on August 5th, the court, KREBS, P. J., filed the following report of the findings of fact and the conclusions of law thereon:

Prior to the passage of the act of assembly of May 6, A. D. 1887, P. L. 79, the better practice, and that recognized generally by the lower courts as well as the Supreme Court, would have been for the register or clerk of the Orphans' Court to have certified the amount of tax assessed in favor of the commonwealth to the Court of Common Pleas, upon which a writ of scire facias would then have issued, and the questions of fact involved in the controversy concerning the liability to pay the amount would necessarily have been submitted to a jury, with the proper instructions upon the law. But now the jurisdiction of the Orphans' Court to determine the whole controversy, both of fact and law, is complete.

In order that there may be no mistake about the facts found by the court, and controlling the conclusions of law, the facts following are distinctly set forth as found:

FINDINGS OF FACT.

1. John DuBois died on May 5, 1886, leaving to survive him none but collateral heirs. This was conceded in the argument by counsel for appellant, no formal proof being offered.

2. On July 5, 1886, an appraiser was appointed under § 12 of the act of April 10, A. D. 1849, the then existing collateral inheritance law. An appraisement was filed in the clerk's office of the Orphans' Court, fixing the value of the estate at $3,310,360.06, on November 26, 1886, to which a supplementary schedule setting out the real estate appraised was attached on November 30, 1886.

3. On December 14, 1886, John E. DuBois made and filed his appeal from said appraisement to the Orphans' Court.

4. On April 15, 1887, by an agreement in writing, the valuation of the estate was fixed at the sum of $2,800,000. Of this amount, $70,000 represents the valuation of the personal property, and mentioned in the inventory filed by John E. DuBois, as executor, and the real estate known as the "Shaffer farm."

Opinion of Court below.

5. The appellant paid to the clerk of the Orphans' Court, five per cent upon $70,000, or $3,500 as collateral tax, and denies liability upon the balance of $2,730,000.

6. On January 17, 1884, John DuBois by deed made and executed and delivered, conveyed to John E. DuBois, his nephew, all his estate, in consideration of one dollar, and certain other good and valuable considerations. The following being an exact copy of said instrument, which is interchangeably executed by both grantor and grantee:

THIS INDENTURE, Made the 17th day of January, in the year of our Lord, one thousand eight hundred and eighty-four, between JOHN DuBOIS, of DuBois, in the county Clearfield, State of Pennsylvania, of the first part, and JOHN E. DuBOIS, of the same place, (the said John E. Dubois being the nephew of John DuBois, the party of the first part,) of the second part.

WITNESSETH:

That the said party of the first part, for and in consideration of the sum of one dollar, (as well as certain other good and valuable considerations,) lawful money of the United States of America, unto him well and truly paid by the said party of the second part, at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents doth grant, bargain, sell, alien, enfeoff, release, convey and confirm unto the said party of the second part, his heirs and assigns, all the lands, tenements and hereditaments, which the said party of the first part owns, holds, or has title to, wherever the same may be, in any and every county, state, territory, or country upon the earth, of every nature and description whatever. Also, all the personal property, goods, chattels, notes, bonds, book accounts, rights, credits and assets, real, personal and mixed, which belong to the party of the first part, or in any way appertain to him, of every nature and character whatever, wherever the same may be found. As a part of the consideration for the sale and conveyance of the above property, John E. DuBois, the party of the second part, hereby covenants, agrees, and obligates himself to pay and fully discharge all debts, notes, obligations, covenants, contracts and damages of every nature and character whatever, whether arising or accruing from contracts or torts of the said John DuBois, party to the first part, and also such notes, obligations, debts, damages or contracts of the said John DuBois, party of the first part, executed, made or incurred at any time in the future, till the day of his death by the said John DuBois; and for the full and faithful performance of this covenant of the party of the second part, all the real estate above conveyed, is hereby charged in the hands of the party of the second part, his heirs or assigns, and any and all the obligations of the above covenants may by the holders or owners of the rights

Opinion of Court below.

of action which may be or are embraced in the above covenants, be sued for and recovered off the said John E. DuBois, by suit brought directly against him, without the intervention of the name of John DuBois, or any administrators on his estate. And it is hereby made an express condition in this deed and sale of land and personalty, that in case John E. DuBois, the party of the second part, shall die before John DuBois, the party of the first part, then in that event this deed, sale and conveyance, and all the covenants herein, shall be null and void, and all the property, real, personal, and mixed, above sold and conveyed, shall be and become fully revested in John DuBois, his heirs and assigns forever. Together with all increments accruing thereon or therefrom.

[The remaining parts of this deed, including the habendum, a general warranty, the sealing and delivery, receipt for One Dollar as the consideration, and the acknowledgment on January 17, 1884, before a justice of the peace, were in the ordinary forms of a deed of conveyance of real estate, except that it was signed, sealed and acknowledged by both the parties thereto.]

7. On January 26, 1885, John DuBois made a last will, which was duly probated on the 18th of May, 1886. This will is in the following words, viz.:

I, John DuBois, of DuBois, in the State of Pennsylvania, do hereby make and publish this my last will and testament, hereby revoking any and all previous will or wills by me made. I hereby give, devise and bequeath unto my nephew, John E. DuBois, all my property, goods, chattels and estate, real, personal, or mixed, of every nature and kind, wheresoever situated, to him, his heirs and assigns forever. And I hereby appoint said John E. DuBois sole executor of this my will, as witness my hand and seal, this 26th day of January, A. D. 1885.

8. The deed of January 17, 1884, after execution and delivery at the house of Hon. George A. Jenks, in the borough of Brookville, Pa., was left in his custody and deposited in his care, and so remained until on the evening of April 25, 1886, he telegraphed from Mr. DuBois' residence, at DuBois, to have it brought up, which was done on the morning of April 26, 1886, by E. H. Clark, Esq., who subsequently took the deed from DuBois to Clearfield on the same day, and on that day between the hours of 7 o'clock and 10 o'clock, P. M., had it recorded in the office for the recording of deeds, and returned with it the next morning to DuBois.

9. [The commonwealth offered to prove by parol testimony, and we find as a fact from the evidence submitted, which we decide is fully competent and relevant: That there was no

change whatsoever in the mode of conducting the business after January 17, 1884, until April 26, 1886, nine days before the death of John DuBois, the grantor; that the large and extensive operations in the manufacture of lumber, taking the standing timber from the land and through all the processes of manufacture to the sale and collection of the proceeds therefrom, was carried on by John DuBois, in exactly the same way, after this deed was made and delivered, as before; and this so continued until April 26, 1886, after which the business was carried on in the name of John E. DuBois. During the period between January 17, 1884, and April 26, 1886, deeds for real estate were made by John DuBois, over his own signature, and judgments entered and revived, and mechanics' liens entered in his name.] [18]

10. [We also admit as competent evidence, the testimony of Dr. Hindman, who attended John DuBois daily from about March 15, 1886, to the day of his death, to prove the fact, and we find as a fact therefrom, that during that period, John DuBois had no hope of recovery himself, and that his physician had none; that he was in a very critical physical condition.] [19]

11. [That from the deed of January 17, 1884, and the parol testimony, we find as a fact, that the enjoyment of the property granted was intended to take effect after the death of John DuBois, grantor.] [9]

12. We decide that the testimony of Hon. George A. Jenks, so far as it relates to the conversation between John DuBois and John E. DuBois, and alleged reasons for not changing the method of business, and the declaration of John DuBois on April 26, 1886, to put the deed on record, and all said in those conversations, incompetent to affect the intention of the parties as to time when the enjoyment of property by John E. DuBois should begin, as manifested by the deed, and the subsequent action of the parties. The reason is, it would be permitting the unsworn declarations of the parties to make evidence in their own favor, which, we think cannot be done.[20]

### CONCLUSIONS OF LAW.

Under the laws of this commonwealth. " If any person who at the time of his or her death was seized or possessed of any

real or personal estate within the commonwealth, die intestate without heirs or any known kindred, such estate shall escheat to the commonwealth, subject to all legal demands on the same :" § 2, act September 29, 1787, 2 Sm. L. 425; § 12, act of April 8, 1833, P. L. 319; § 1, act of June 27, 1864, P. L. 951. We refer to these statutes of escheat for the purpose of showing that the transmission of estates in this commonwealth is the subject of statutory regulation.    The same power which declares that upon the happening of certain contingencies the entire estate shall escheat to the commonwealth, has also declared that "All estates, real, personal and mixed, of every kind whatsoever, passing from any person who may die seized or possessed of such estate, being within this commonwealth, either by will or under the intestate laws thereof, or any part of such estate or estates, or interests therein, transferred by deed, grant, bargain, or sale, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor to any person or persons, or to bodies politic or corporate, in trust or otherwise, other than to the use of father, mother, husband, wife, children or lineal descendants born in lawful wedlock, shall be and they are hereby made subject to a tax or duty of five dollars on every hundred dollars of the clear value of such estate or estates," etc.: § 1, act of April 7, 1826, 9 Sm. L. 146; act of April 10, 1849, P. L. 571, and act of May 6, 1887, P. L. 79.

It would not be a difficult matter to vindicate the propriety of such legislation, if such discussion was pertinent to the question before us.    As to the nature and character of that which is commonly called a tax, and which is claimed by the state out of certain estates, before they shall pass to those who have done nothing to accumulate them, we refer any inquiring mind to the opinions of the learned judges in the lower courts, as reported in Strode v. Commonwealth, and Clymer v. Commonwealth, 52 Pa. 181, et seq.    The statute is of too long standing for us to declare it odious, and by interpretation nullify its provisions.    Whenever an estate is clearly within its provisions it is our duty so to declare, and enforce the law.

All of the very learned argument of the senior counsel, Hon. W. P. Jenks, for the appellant, bearing upon the rules of construction to be applied to the deed of January 17, 1884, and

the rights of the grantor and grantee thereunder, has, in our humble judgment, little to do with the question before us. That a deed may not be changed, modified or explained by parol, except for fraud or mistake, is undoubtedly the settled law of this state. That the delivery and recording of a deed under our recording acts, has the same force and effect as feoffment and livery of seisin in any of the King's courts of record at Westminster are or shall have in Great Britain, etc., is in the language of express statute. The construction and force to be given to the formal words, " grant, bargain and sell," and the effect of a general warranty, are entirely foreign to the contention here. The whole question hinges upon a single fact, whether or not the transfer of January 17, 1884, was made or intended to take effect in actual enjoyment at the death of John DuBois, the grantor. As is said by MR. JUSTICE CLARK, in Reish v. Commonwealth, 106 Pa. 521, " The policy of the law will not permit the owner of an estate to defeat the plain provisions of the collateral inheritance law by any device which secures to him for life the income, profits and enjoyments thereof; it must be such a conveyance as parts with the possession, the title, and the enjoyment, in the grantor's lifetime."

[Taking the deed of January 17, 1884, with the covenants or stipulations of the grantee therein, giving the power to the grantor to bind the estate granted by indebtedness, without limit as to the amount, and reading it with the proof that it was not placed on record until the grantor was in articulo mortis, and that the entire business of the vast mills and property, aggregating millions of dollars in value, was carried on and controlled by him without interruption from the grantee, and without change in any single department thereof, and the conclusion forces itself upon us, that it was not intended by this deed that the enjoyment of the estate granted should pass out of the grantor so long as the hope or possibility of life continued. The express power retained by the grantor to contract any debts he might see proper to contract, and also to bind the estate for his torts done thereafter, is a reservation which is wholly nugatory unless the enjoyment of the estate remained in him. The effect of this instrument, in other words, was to clothe John E. DuBois with a naked legal title liable to be defeated by the power reserved to John DuBois to create liabili-

ties ex contractu, and ex delicto, equal to the value of the property granted, and this is no more nor less than retaining the enjoyment of the property as fully as if no deed had been made. The management of the entire property, its conversion from one form to another, its sale, the appropriation of the proceeds thereof, unchallenged by the grantee, place the enjoyment thereof, within the meaning of the statute, in John DuBois, the grantor.] [23]

It is no sufficient answer, in our opinion, to say that the change in possession and management of the estate did actually take place nine days before death terminated the life of the grantor. The testimony is, that when the actual change in the mode of conducting the business was made, death was daily awaited and expected. A transfer ostensibly made two years and more before, unaccompanied with a delivery of possession and control of the property and effects granted or alleged to have been transferred, until the grantor is confronted with death, is not such a conveyance as the law requires. A conveyance which parts with the possession, the title and the enjoyment, in the grantor's lifetime, alone answers the demands of the statute. We do not decide that a sale bona fide in all its purposes and intentions, might not be made, and interrupted by sudden and unexpected death before delivery of possession which would be free of the collateral inheritance law, but the evidence of the intention of the parties would have to be clear.

The learned counsel, Hon. George A. Jenks, in his argument, contended, that in order to make the property liable the grantor must have some estate or title remaining, and that if the deed of January 17, 1884, divested him of all title and estate, under the rules of construction as applied to deeds, in a controversy between the parties thereto, then no liability existed. But the answer to this is given by Mr. Justice CLARK, in Reish v. Commonwealth, supra, in which he says, "It is the value of the estate transferred which is liable to the duty, not the value of the interest or part remaining." [We say further, that although a deed was made, which between the parties if standing alone would divest the grantor of all estate in the property granted, yet a parol agreement that the grantor shall enjoy the fruits thereof during life, or at the sufferance of the grantee, by which the grantee permits the grantor to

enjoy the use and control of the property, makes the estate apparently granted liable to the collateral inheritance law.] [24]

[Being of the opinion that it was pertinent and relevant for the commonwealth to show by parol that, notwithstanding the formal grant contained in the deed of January 17, 1884, the actual enjoyment of the property mentioned therein remained in the grantor, and that he did enjoy it until hope of life had ceased, we must conclude that the deed is ineffectual to pass this property clear of liability, and that to hold otherwise would be to defeat the plain provisions of the collateral inheritance law.] [25]

We are convinced that it is against the policy of the law to say that a man may make, execute, and deliver a deed transferring all his property, and at the same time, for all practical uses, retain the exclusive control of it, as was done in this case, and then when hope of life no longer exists relinquish the control and enjoyment of the property, and thus defeat the provisions of the statute. To so decide would in effect be repealing the law, or at least so nullifying its provisions as to leave it but a blot upon the statute book.

In order that the appellant may have the opportunity to correct any error in our conclusions, we will answer the points presented by counsel, seriatim.

Appellee's points [inter alia] :

2. A deed or transfer by the decedent in his lifetime to a collateral, does not bar the right of the commonwealth to the 5 per cent collateral inheritance tax, if such deed or transfer was made or intended to take effect in possession or enjoyment after the death of the grantor.

3. Any deed which retains or appropriates the property to the beneficial use of the grantor during his life is such a deed. And the deed of January 17, 1884, from John DuBois to John E. DuBois is of that character.

Answer : These points are affirmed. [7] [8]

Appellant's points [inter alia] :

1. An estate is only taxable when it passes from the owner, at the time, in the mode, and to the persons designated by the act of 1826 ; and when it passes or has passed by deed or contract, a part of such estate, to wit : its possession or enjoyment by limitations in the conveyance or some concurrent and ac-

companying instrument in writing, must have been withholden from the grantee until after the death of the grantor or bargainor. To make it taxable the death of the grantor must add to the estate already in the hands of the grantee, the possession or enjoyment which has been withholden from him.

Answer: To the first point we make answer, that if it is intended by this point to say that in order to create liability under the collateral inheritance law, the enjoyment to the grantor during life must be reserved in the conveyance, or evidenced by a contemporaneous writing, then we must decline to answer as requested.[1]

2. The whole estate in the property mentioned in the conveyance passed out of John DuBois and became vested in John E. DuBois by the deed, if it was executed and delivered to him on January 17, 1884, by his uncle John DuBois.

3. That no part or interest in the estate thus conveyed could be made to revest in John DuBois, the grantor, in any other manner than that provided for in his deed, or by such written instrument as is required by the act of March 21, 1772, 1 Sm. L. 389.

Answer: The second and third points we decline to answer in the affirmative.[2] [3]

4. If John DuBois had at the time of his death no estate or interest which he could enforce by law in the property conveyed by him on January 17, 1884, the act of April 26, 1826, 9 Sm. L. 146, which provides for the payment of a collateral inheritance tax, has no application, and judgment should be entered in favor of the appellant and against the commonwealth as to the claim made against said property.

Answer: The fourth point we decline to answer as requested. It is a simple question whether he did enjoy the use and control of the property, and not whether he had a legal right he could enforce as against the grantee.[4]

5. That John DuBois did not die seized or possessed of any of the real estate conveyed by him to John E. DuBois on January 17, 1884; therefore no part of such estate is subject to the payment of a collateral inheritance tax.

Answer: The fifth point does not state the facts as they existed, and we decline to answer the point.[10]

6. That if the title of John E. DuBois to the property men-

tioned in the deed referred to in the 2d, 4th and 5th points was complete during the life of the grantor, it would not be taxable.

Answer: The sixth point we might decline to answer for the same reason as the fifth. As an abstract proposition of law, it is true; but the finding of facts does not support the point and we decline it.[11]

8. That if the deed was executed and delivered without any fraud or mistake, by its terms the entire estate in the property therein mentioned became vested in John E. DuBois; that being so, no subsequent acts or declarations of either the grantor or grantee short of such acts or declarations as meet the full requirements of the act of 1772 could revest such an interest in the grantor as would subject property in the hands of the grantee to the payment of the tax.

Answer: Denied.[12]

9. If the whole estate in the property mentioned in the deed passed from John DuBois and became vested in John E. DuBois on January 17, 1884, any subsequent arrangement between the parties, honestly made, by which John DuBois was authorized or permitted to use or enjoy the property during his life, would not subject the property to the payment of the tax.

Answer: Denied, so far as it has application to this case.[13]

10. As possession and enjoyment are incidents to an estate in fee simple, the conveyance of such estate when executed, delivered and recorded in good faith, pass such incidents with the estate. To prevent these from thus passing, the condition so limiting the estate must be annexed to the estate at the time of making it, and the mode of such limitation must meet the requirements of the statute of frauds and perjuries.

Answer: Denied.[14]

11. If by the conveyance itself, unlimited as stated in 10th point, the grantee had the estate, possession and enjoyment of the real estate and property described in the deed in the lifetime of the grantor, such property is not subject to the tax.

Answer: Denied.[15]

12. Where a legal right is conditioned upon or depends solely upon an act or acts which a man has a perfect legal and moral right to refuse or omit to do, he cannot be guilty of

fraud upon any law which conditions or makes its claims to depend solely upon the performance of such act or acts, by his refusal or omission to perform said act or acts. The right to dispose of property is an absolute one; the owner in the exercise of this right, in so far as it is related to the right of the state to claim a collateral inheritance tax, is entirely free to select the persons to whom, the time when, the mode and the consideration for which, he conveys his property; and when he in his lifetime freely and fully conveys in a lawful manner his whole estate, the property thus conveyed is not subject to the payment of a collateral inheritance tax in the hands of the grantee.

Answer: The twelfth point is affirmed as a statement of a legal right, but as it has no application to the case before us, it is denied.[16]

13. Where the possession or enjoyment of land is in one to continue during his life, who is not the owner of the title, it is a freehold and life estate in such person and can only be created or founded upon an instrument in writing such as is required by the act of March 21, 1772, and there being no written evidence showing such estate for life to have been in John DuBois after his deed of January 17, 1884, the land conveyed by him is not subject to the payment of a collateral inheritance tax in the hands of John E. DuBois his grantee.

Answer: Denied.[17]

14. The real estate described in the deed of John DuBois to John E. DuBois, dated January 17, 1884, under the evidence, is not liable to collateral inheritance tax.

15. Neither the real nor personal property described in the deed of January 17, 1884, is, under the evidence, subject to collateral inheritance tax.

Answer: The fourteenth and fifteenth points are denied.[5] [6]

We therefore conclude that the appeal must be dismissed, and it is ordered, adjudged, and decreed, this 5th day of August, A. D. 1887:

1. That the appeal of John E. DuBois, from the assessment under the collateral inheritance law, be and is hereby dismissed.

2. That the said John E. DuBois pay, or cause to be paid, without further delay, unto D. R. Fullerton, Esq., register and

clerk of the Orphans' Court, the further sum of $136,500 with interest thereon, at the rate of twelve per cent per annum, beginning with May 6, 1887.

3. That the said John E. DuBois further pay, or cause to be paid, the costs of this appeal, and such fees as are legally taxable therein.

Thereupon the appellant took this appeal, and assigned as error :

1–6. The answers to appellant's points.[1 to 6]

7, 8. The answers to appellee's points.[7 8]

9. The 11th finding of fact embraced in [ ] [9]

10–17. The answers to appellant's 5th and 6th points.[10 to 17]

18, 19. The findings of fact embraced in [ ] [18 19]

20. The exclusion of the testimony of Hon. G. A. Jenks.[20]

23–25. The portions of the opinion embraced in [ ] [23 to 25]

*Mr. Wm. P. Jenks* and *Mr. Geo. A. Jenks* (with them *Mr. Thos. H. Murray* and *Mr. Cyrus Gordon*), for the appellant :

The right of the commonwealth is a statutory one, expressly founded upon the conditions or qualifications declared in the act and found in the written instrument of transfer, or some accompanying instrument. The duty to pay the tax is not based on any moral obligation. If the estate or interest does not pass by will, nor under the intestate laws, or, if the written instrument of transfer was so made and intended that it passed the title and the possession and enjoyment, before the death of the maker, to any person other than those excepted by the terms of § 1, act of April 7, 1826, P. L. 146, it is not subject to the tax or duty, even though the grantor devised to the grantee the same property described in the deed : Stinger v. Commonwealth, 26 Pa. 422 : Orcutt's App., 97 Pa. 185. Reish v. Commonwealth, 106 Pa. 521, properly understood and applied rules this case.

The conclusions reached by us are as follows :

1. That the deed executed and delivered by John DuBois on January 17, 1884, independent of any statutory virtue imparted to it, did at that time transfer to John E. DuBois, and vest in him the title, possession, and enjoyment of the property mentioned in the deed, and said deed shows that the grantor so intended.

In construing a deed, the court places itself as nearly as possible in the situation of the parties, and their intention is to be deduced from the instrument of conveyances, as in the case of any other contract: Martindale on Conveyancing, §§ 90, 94; Devlin on Deeds, § 835; Walker v. Physick, 5 Pa. 202; 2 Bl. Com. §§ 379, 380; and a party is always estopped by his own grant: Fletcher v. Peck, 6 Cranch 137; McWilliams v. Martin, 12 S. & R. 269.

2. That said deed having been made, delivered, and recorded, did by force of the 5th and 6th sections of the act of 28th of May, 1715, P. L. 95, pass to the grantee, the title, possession, seisin of the lands, tenements, and hereditaments therein described, with the same force and effect as have deeds of feoffment with livery and seisin in the Kingdom of Great Britain.

3. In addition, said deed having in it the words grant, bargain, sell, the grantor did expressly covenant with the grantee that he was seized of an indefeasible estate in fee-simple, in the lands, tenements and hereditaments in said deed mentioned, freed from incumbrances, done or suffered by the grantor, and further that he did expressly covenant with the grantee for his quiet enjoyment of the said property against the grantor, his heirs and assigns, which said covenant for quiet enjoyment was not limited by express words contained in such deed. Under the law, as declared by these sections of the act of 1715, the grantee had, by force of the statute and before the death of the grantor, the title, possession, and enjoyment of the lands, tenements and hereditaments mentioned in said deed: 1 Shep. Touchstone, 324, 353; Walker v. Whitehead, 16 Wall. 317.

4. There having been neither fraud, accident, nor mistake at the time the deed was executed and delivered, and no attempt to make any fraudulent use of it in violation of a promise or agreement, made at the time it was signed, and without which it would not have been executed, parol evidence is not admissible to contradict or vary its terms. And the admission of parol testimony for that purpose, and permitting it to have that effect, was an error.

When a deed, with the evidence of complete and unqualified execution on its face, has been signed, sealed and delivered, parol evidence of an agreement or understanding that it should

not take effect until a certain event, is inadmissible as going to vary the terms of the deed, and make that conditional which appeared to be absolute: Ward v. Lewis, 4 Pick. 418 ; Means v. Church, 3 W. & S. 303 ; Hileman v. Bouslaugh, 13 Pa. 344; Devlin on Deeds, § 976; Miller v. Fichthorn, 31 Pa. 259; Albert v. Zeigler, 29 Pa. 57; Collam v. Hocker, 1 R. 107; Martin v. Berens, 67 Pa. 459; Phillips v. Meily, 106 Pa. 536.

5. That the deed having become effectual on January 17, 1884, by its execution and delivery without fraud or mistake, and further, having been duly recorded, the rights in the grantee thereby created and assured cannot be defeated or changed by acts occurring afterwards, nor could the estate in the grantee, or any part thereof, be made to revest in the grantor, in any other manner than that provided for in the deed or by such written instrument as is required by the act of March 21, 1772, P. L. 389.

6. That John DuBois, by deed executed and delivered by him in good faith, without fraud or mistake, on January 17, 1884, conveyed and assured to John E. DuBois the title, possession, and enjoyment of the lands, tenements and hereditaments therein mentioned, and said deed having also been recorded, and the rights created and assured thereby to the grantee, having remained unchanged in him, the property so conveyed and assured is not subject to the payment of a collateral inheritance tax.

7. There is nothing in the special covenants of the grantee which impair or alter any of these conclusions.

The covenant for the payment of pecuniary liabilities and the charge upon the realty are so related as to show that the full ownership and control of the property conveyed were regarded by both grantor and grantee as the means which would enable the grantee to perform his covenants ; and when parties have entered into written engagements with express stipulations, it is manifestly not desirable to extend them by implication. The presumption is, that having expressed some, they have expressed all, the conditions by which they intend to be bound under that instrument: Broom, Leg. M. 653 ; Shep. Touchstone, 251; 2 Bac. Abr. 303; Martindale on Conv. § 125; Berridge v. Glassey, 112 Pa. 448.

*Mr. Jos. B. McEnally* (with him *Mr. Daniel W. McCurdy*), for the appellee :

1. Two classes of property are described by the act as subject.to the tax : (1) All that passes by will or under the intestate laws, at the death of the decedent, to collateral kindred or strangers. This includes property not transferred by the decedent in his lifetime. (2) All property transferred by the decedent in his lifetime, under transfers which were *made* or *intended* to take effect in possession or enjoyment after the death of the grantor. And the law may be briefly stated thus : All transfers or deeds, which, by their terms in the light of surrounding circumstances, leave the property for the use, enjoyment, or benefit of the grantor during his life, and all transfers or deeds, no matter what their terms may be, which are intended as a contrivance to accomplish that purpose, leave the property still subject to the tax as the estate of such grantor. The fact that the grantor does not *let go*, is what makes it, in the eye of the law, remain his property for the purposes of the tax : Reish v. Commonwealth, 106 Pa. 521 ; Seibert's App., 110 Pa. 329. The principle upon which the law is based is worthy of notice. It is, that the owner's dominion over his property ceases at his death ; that the right of succession depends upon municipal law; that, therefore, collaterals are not owners of a decedent's estate and cannot become so except upon such terms and to such an extent as the law provides : Strode v. Commonwealth, 52 Pa. 182 ; Clymer v. Commonwealth, 52 Pa. 187.

2. By the words of this deed John E. DuBois is bound by every contract John DuBois might choose to make, up to the moment of his death, no matter whether it respected the property mentioned in the deed or any other. He might convey it or incumber it, or in other ways appropriate it to his own use or to sustain his own credit. His powers were, for practical purposes, about as full and complete as they were before the deed was made. The contracts, obligations, etc., referred to are described to be those " of every nature and character whatever." No exceptions are made, and the words used are as broad as the English language affords. Not only is John E. DuBois bound by the contracts of John DuBois, but all the property is bound also. John E. DuBois takes it subject to

the charge.   If John DuBois should sell a portion of either the real or personal property, in what way could John E. DuBois successfully resist it?   Either John DuBois or his vendee, could point to the deed and say to John E. Dubois, there is your deed, you are bound by the contract of John Du-Bois, and so is your property; you are estopped from opening your mouth against any act of this kind that John DuBois may do ; it is only upon the condition that he can do these things that you obtained a chance under the deed of eventually getting his estate.

3. The acts of the parties under the deed are in harmony with this construction.   For we find after January 17, 1884, in the years 1884 and 1885, that John DuBois made sixteen conveyances of real estate appearing of record in his own name and as his own property.   Also we find four mechanics' claims in the years 1884 and 1885, entered up by him in the same way, and twelve judgments entered, given by various parties to him alone ; also two mortgages given to him, one in 1885 and the other in March, 1886.   We have also the further evidence that all the business of his mills was conducted in his name, as it had been before ; that even his general superintendent, G. R. Vosburg, was not aware of any transfer having been made by John DuBois to John E. DuBois until April 26, 1886, when they chose to put the deed upon record.   Also, that during all this time John E. DuBois occupied a subordinate position like any other employee about the establishment, and if he drew any check connected with the business he drew it in the name of John DuBois per John E. DuBois.   We are therefore bound to conclude both from the deed itself and from the conduct of the parties under it, that it not only gave, but was intended to give, to John DuBois absolute power over the property as long as he lived.

OPINION, MR. JUSTICE STERRETT :

Briefly stated, the question in this case is whether the commonwealth is entitled to collateral inheritance tax on $2,730,000, the agreed value of certain real and personal property, which belonged to John DuBois on January 17, 1884.

On that day Mr. DuBois executed and delivered to his

nephew, John E. Dubois, a deed of conveyance, under and by virtue of which it is claimed the title to said property so vested in the grantee, during the lifetime of the grantor, that at the decease of the latter in May, 1886, it was not subject to collateral inheritance tax, under any of the provisions of our act, which declares, " All estates, real, personal and mixed, of every kind whatsoever, passing from any person who may die seized or possessed of such estate, being within this commonwealth, either by will or under the intestate laws thereof, or any part of such estate or estates or interests therein, transferred by deed, grant, bargain or sale, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons, or to bodies politic or corporate, in trust or otherwise, other than to the use of father, mother, husband, wife, children or lineal descendants born in lawful wedlock, shall be and they are hereby made subject to a tax or duty," etc.

The only ground on which the commonwealth can assert any right to the tax in question is that the conveyance, in the language of the act, was, " made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor." If it was either made or intended to take effect, either in possession or enjoyment, after his death, it follows from the very language of the act that the commonwealth is entitled to the tax. Conceding the conveyance was made and intended to take effect in possession before the death of the grantor, was it either made or intended to take effect in enjoyment before the happening of that event? In a clear and convincing opinion, on which we might well rest our affirmance of his decree, the learned president of the Orphans' Court held that the conveyance was not intended to take effect, nor did it in fact take effect in enjoyment until the decease of the grantor. His finding of fact to that effect was clearly warranted by the evidence; but, waiving that point, and conceding for sake of argument, that there is no competent evidence of intention dehors the instrument itself, we have no doubt the conveyance, fairly construed, according to the spirit and meaning of the act above quoted, did not take effect in enjoyment until the decease of the grantor.

The manifest effect of the conditions, reservations, covenants

and stipulations in the deed was to clothe the grantee with the naked legal title, liable to be defeated at any time by the powers reserved to the grantor to create liabilities either ex contractu or ex delicto to the full value of the property and even beyond it.   In the first place the grantee, in consideration of the conveyance, covenants and agrees to pay and fully discharge " all debts, notes, obligations, covenants, contracts and damages of every nature and character whatsoever, whether arising or accruing from contracts or torts of said John Du-Bois . . . . . and all such notes, obligations, debts, damages or contracts of the said John DuBois . . . . . executed, made or incurred at any time in the future till the day of his death, by the said John DuBois; and, for the full and faithful performance of this covenant . . . . . all the real estate above conveyed is hereby charged in the hands of the party of the second part, his heirs and assigns; and any and all the obligations of the above covenants, may, by the holders or owners of the rights of action which may be or are embraced in the above covenants, be sued for and recovered off the said John E. DuBois, by suit brought directly against him."   It is further provided that in case the grantee dies before the grantor, "the deed, sale, and conveyance and all the covenants therein shall be null and void, and all the property, real, personal and mixed, above sold, shall be and become fully revested in the said John DuBois, his heirs and assigns forever, together with all increments accruing thereon and therefrom."   Again, it is further expressly stipulated that the grantee is to have and to hold all the property conveyed. "subject to the foregoing conditions and charged with the foregoing covenants."

According to the express terms and conditions of the conveyance, it is simply impossible that it could take effect in enjoyment, as to any of the property embraced therein, during the lifetime of the grantor.   In the event of his surviving the grantee, the deed was to become null and void, and everything revert to the former.   During their joint lives the grantor had the power to incur obligations to the full value of the property, for which the property itself, as well as the grantee individually was directly and specifically liable.   The naked legal title acquired by the grantee was the merest shadow.   The grantor

held a firm grasp on the entire substance, and he retained it as long as he lived. In view of all this, it is idle to contend that, in any proper or statutory sense of the word "enjoyment," the conveyance in question took effect or could have been intended to take effect in enjoyment prior to the death of John DuBois. In principle the case is virtually ruled by Reish v. Commonwealth, 106 Pa. 521, and Seibert's Appeal, 110 Pa. 329. In the former, it was held that the right of the commonwealth to collateral inheritance tax was not defeated by a conveyance or transfer of the title to the property, during the lifetime of the owner, nor by possession taken under such conveyance, if the enjoyment of the property conveyed is not intended to take effect till the death of the grantor. In this case, as we have seen, the conveyance was not intended to take effect in enjoyment during the lifetime of the grantor, nor in point of fact did it or could it do so.

It is unnecessary to notice the specifications of error seriatim. As already intimated, the able and exhaustive opinion of the court below, in which every material question is fully considered and correctly disposed of, relieves us from the further consideration of those questions.

> Decree affirmed, and appeal dismissed at the costs of appellant.