IN RE ESTATE OF JOHN R. LAMB, Deceased, Appellee, v. W. W. MORROW, Treasurer of the State, Appellant.

**Taxation:** INHERITANCE TAX. An estate in lands cannot be taxed as a collateral inheritance where the title passed to the grantees who were not in fact heirs, under a deed followed by immediate and continuous possession and control, and in consideration of the life support of the grantors, where there was a full compliance with the contract for support and no evidence of any intention to defeat the inheritance tax.

**Adoption of children:** COMPLIANCE WITH STATUTE: EQUITABLE CIRCUMSTANCES. Articles of adoption which are not in compliance with the statute, unacknowledged and unrecorded, do not constitute a legal adoption and are insufficient to establish heirship, and other equitable circumstances cannot be relied upon to make one an heir if they do not in law establish that relation.

**Inheritance tax:** CONVEYANCE TO COLLATERAL HEIRS: LIFE ESTATE: WAIVER: PAROL EVIDENCE. A conveyance to collateral heirs which is not to become effective in possession or enjoyment during the life of the grantor, but reserves a life estate or beneficial use therein is subject to an inheritance tax; but even though containing such a provision it may be waived by the grantor, and as no one but the parties to a transaction can rely on the statute of frauds it is competent for the grantee, as against the State seeking to impose the tax, to show a modification of the contract and waiver of the reservation by parol, when supported by a consideration; and generally the modification of a written contract, while still executory, or full execution of the contract, is sufficient consideration to support the oral agreement.

*Appeal from Jasper District Court.*—HON. L. E. WILLCOCKSON, Judge.

FRIDAY, OCTOBER 30, 1908.

APPEAL from the action of the district court in re-

fusing to assess a collateral inheritance tax against the property of John R. Lamb, deceased. *Affirmed.*

*H. W. Byers,* Attorney General, and *George Cosson,* Assistant Attorney General, for the State.

*O. P. Myers,* for appellee.

DEEMER, J.—In the year 1858 attempt was made by John R. and Mary Lamb to adopt as their child Charlotte Emma Holmes. Articles of adoption were signed by them and by the father of the adopted child, the

1. TAXATION: inheritance tax. mother being dead; but these were neither acknowledged nor recorded, nor did they comply with the statute then in force regarding articles of adoption. William A. Holmes is a son of Charlotte Emma Holmes. September 10, 1900, John R. Lamb and his wife, Mary, conveyed by warranty deed thirty-eight acres of land in Jasper County, Iowa, to William A. Holmes, the expressed consideration being $1 and other valuable considerations. The deed reserved a life estate in the grantors, and as a part of the transaction the grantors in the deed, as parties of the first part, entered into a contract with the grantee Holmes and his wife, Maggie, as parties of the second part, the material parts of which read as follows:

That the parties of the first part have this day conveyed to the second party their real estate situated in section 33, township 80, range 19, for the following consideration: The said second parties agree to move upon said premises, farm and cultivate the same, raise stock and produce thereon and do all the work in farming said premises and also do all the housework in caring for first parties, make for them a good, comfortable home, and care for them and provide them with fuel and plenty of good, wholesome food as long as they or either of them shall live; and to treat them kindly at all times and through-

out their old age, and at their death give them a suitable burial and pay the expenses of the same. The said first parties also give to the said second party, William A. Holmes, the stock, wagons, implements, and tools now upon said farm upon same consideration, and said Holmes can now take possession of the same and use same on said farm. At present both of the first parties are disabled and not able to do any work or care for themselves, and they need immediate care. First parties shall be required to pay towards their support only what money is left of the interest on their money after the taxes are paid. If said second parties comply with this agreement the said farm is to be theirs in fee simple as provided by said deed. In case the second parties should fail to comply with this agreement, then first party shall serve written notice on second party, pointing out wherein second parties so fail and giving them an opportunity to comply with and literally perform their agreements herein. Should they then refuse to so comply for the period of sixty days, then first parties may declare the deed void and pay second parties a reasonable compensation for their work, care and support. Should this occur, second parties agree to at once convey said land to first parties or either of them.

Mary J. Lamb died in August of the year 1905, and John R. Lamb in September of the year 1906. On March 15, 1905, John R. Lamb made a will, the first paragraph of which reads in this wise:

Heretofore, on the 10th day of September, 1900, I joined with my wife, Mary J. Lamb, in a contract and deed of our present home property of about thirty-eight acres, with William A. Holmes and wife, Maggie L. Holmes, and it is my will that contract be fully carried out and executed, and that said deed and land, on the full execution of said contract, and after the death of both myself and my said wife, shall pass and go to the said William A. Holmes and Maggie L. Holmes, with this exception, namely, that I wish that the expenses of my funeral and burial shall be paid out of my personal estate, and shall not be paid by the said Holmes, as said

contract provides; and as part of my said burial expenses, I hereby direct my executor hereinafter appointed, to get for my grave a stone box or covering suitable therefor, in which to place my coffin, and also to place upon the monument of myself and wife, a suitable inscription.

This will was duly admitted to probate. During the course of administration, the Treasurer of State took the necessary preliminary steps to have the Lamb estate appraised and made subject to the collateral inheritance tax. To this William A. Holmes filed objections, both in his individual capacity and as executor of the will of John R. Lamb. In these he claimed to be the owner of the land under the deed heretofore set out, and by reason of subsequent oral arrangements between himself and John R. Lamb, and also because he is and was the lineal descendant and heir at law of Charlotte Holmes. The issues thus tendered were tried to the court resulting in a judgment finding that the estate of John R. Lamb and especially the thirty-eight acres of land, was not subject to the inheritance tax provided by statute. The appeal by the State Treasurer challenges these rulings.

The oral testimony adduced showed that the grantee in the deed took immediate possession of the land covered thereby, and that he continued to occupy the same down to the time of trial. It also showed that he and his wife fully complied with the terms of the contract, gave to Mr. and Mrs. Lamb the necessary care and attention, and furnished them adequate support during their lives, that no forfeiture was made or attempted of the estate conveyed, and that the grantee in the deed received all the rents and profits arising from the land. It was also shown without objection that in October of the year 1905, which was shortly after the death of Mary Lamb, a change was made in the contract, to which we have referred, the change being shown by the following excerpt from the testimony of William A. Holmes:

Mr. Lamb was up town. Came home and said that he had talked with Mr. Myers about the deed, and said, 'And I want you to take it and have it put on record. I want to turn everything over to you, so that after I am dead there cannot ever anything come up to make you any trouble. I turn everything over to you. I don't want anything more to do with it. I don't want to pay the taxes or the insurance. I don't want anything more to do with it.' This was in the early part of October, 1905. It was on the day, or possibly a day or two before, the deed was recorded. Mr. Lamb never claimed ownership of the land to my knowledge.

It was also shown that, while Lamb paid the taxes and insurance on the land prior to the change made in the contract, after that date these were paid by Holmes; that Holmes had full possession of the land, and that Lamb never claimed ownership thereafter or any rights therein or thereto. Indeed, it is shown that after that time he expressly disclaimed any interest in the land, and many times asserted that it belonged exclusively to Holmes. It further appears that at this time Lamb had in personal property something like $2,000, and that he declared "that he had money enough to last as long as he lived; that he could not live a great while longer, and that he had no use for the place." There is no suggestion in the record or in argument that these arrangements were for the purpose of defeating the inheritance tax.

It is practically conceded that the articles of adoption, to which reference has been made, were insufficient in law to make Charlotte Holmes a legally adopted child of John and Mary, and it is clear that under the rule announced in this State these articles cannot be regarded as establishing the heirship of William Holmes. *Long v. Hewitt,* 44 Iowa, 363; *Bresser v. Saarman,* 112 Iowa, 720; *Hopkins v. Antrobus,* 120 Iowa, 21. and cases cited. See, also,

2. ADOPTION OF CHILDREN: compliance with statute: equitable circumstances.

*Sires v. Melvin,* 135 Iowa, 460. Appellee's counsel contend, however, that the case is in equity, and that the attempt at adoption, and the conduct of the parties thereunder, should be considered· in arriving at a final conclusion of the controversy. The answer to this is that the case is not in equity, and if it were, the matters relied upon cannot make one an heir if in fact they do not in law establish that relation. There are many other reasons why these so-called equitable circumstances should· not be considered. Holmes does not, in any event, take as an heir. He holds the land either by will or by reason of some contract relation entered into with Lamb before his death, and in no view of the case should he be regarded as the legal heir of Charlotte Holmes.

II. The Attorney General insists that the conveyance to Holmes was conditional; that the grantors reserved a life estate, and that the entire estate did not vest until after the death of John R. Lamb. The force of these claims becomes apparent when viewed in the light of the statute imposing the tax. So far as material, it reads as follows:

3. INHERITANCE TAX: conveyance to collateral heirs: life estate: waiver: parol evidence.

All property within the jurisdiction of this State, and any interest therein, whether belonging to the inhabitants of this State or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other State, or by deed, grant, sale or gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor, to any person, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, lineal descendant, adopted child, the lineal descendant of an adopted child of a decedent, stepchild, or the lineal descendant of a stepchild of a decedent, or to or for charitable, educational or religious societies or institutions, including hospitals, public libraries and public art galleries kept open to the free use of the public not less than three days of each week, within

this State, shall be subject to a tax of five percentum of its value, above the sum of one thousand dollars, after the payment of all debts, for the use of the State.

If the land passed by deed, grant, or sale, made or intended to take effect, in possession or in enjoyment, after the death of the grantor, then it was subject to the inheritance tax. Contention is made that, while the land passed by deed or sale, it was not to take effect in enjoyment or possession until after the death of the grantor, John R. Lamb. Reliance is placed upon the reservation of a life estate, and upon the provisions and conditions of the contract, supported by the will, which is counted upon as giving force to these contentions. It is no doubt true that the owner of an estate cannot defeat the tax by any device which secures to him for life the income, profits, or enjoyment thereof. The conveyance must be such as passes the possession, the title, and the enjoyment of the property in the grantor's lifetime. This is the rule in other States having statutes similar to our own. See *Seibert's Appeal,* 110 Pa. 329 (1 Atl. 346); *Du Bois' Appeal,* 121 Pa. 368 (15 Atl. 641); *Reish v. Com.,* 106 Pa. 521; *In re Brandreth's Estate,* 169 N. Y. 437 (62 N. E. 563, 58 L. R. A. 148); *In re Green's Estate,* 153 N. Y. 223 (47 N. E. 292), and should be the one adopted here. If the case stood upon the deed, the contract, and the will alone, it would be very much stronger for the State or its treasurer than it appears to be when considered with the other testimony. The deed and contract are somewhat ambiguous. One permissible construction is that an estate in fee was conveyed subject to be defeated by breach of condition subsequent, and another that the grantor reserved a life estate during the life of himself or his wife, and that the land did not pass, either in possession or enjoyment, until the death of the grantor. From our point of view there is no need of deciding this question, for the reason that the testimony shows, without any conflict or dispute, that a

change was made in the contract, and with reference to the deed and its delivery after the death of Mary Lamb. The testimony already set forth shows this change, and it is relied upon by appellee as supporting the finding of the trial court. Appellant's counsel have not argued this proposition for reasons best known to themselves, and we must decide the question without the aid of argument for the State. It seems to be settled that no one but the parties to a transaction may rely upon the statute of frauds. See 20 Cyc. 306, and cases cited. So that parol evidence is admissible to show a change in the relations of the parties under their previous contracts, and may also be received to show a conveyance or disposition of the land. This is the rule announced in a case very similar to the one at bar. See *In re Estate of Huey,* 24 Pittsb. Leg. J. 470.

Under this rule it was proper for Holmes to show a modification or cancellation of the written contract, and a waiver of the life estate reserved by the deed. This he did, by testimony which was not objected to by counsel for the Treasurer. Under that testimony it appears that both possession and enjoyment of the property and estate passed to Holmes in October, 1905. The will, which was made long before that time, has no bearing upon this aspect of the case, for it was within the power of the testator to dispose of property covered thereby at any time before his death, and the prior provisions of the will would have no bearing upon his purposes or intent. We are constrained to hold that Lamb waived his life estate reserved by the deed, and that the deed was redelivered to Holmes in October of the year 1905, with intent to pass the title with all its incidents, including the right to present possession and enjoyment. Indeed, there is no dispute in the testimony over this proposition; and, if the testimony be competent, this should end the controversy. No objection was made to the testimony when offered, nor is any claim made at this time, that it was incompetent. Such a

record does not call for a discussion of the admissibility of the testimony, and we must treat it as competent.

Moreover, there is such ambiguity in the papers themselves, regarding the right of possession and enjoyment that oral testimony was admissible to show how the parties acted with reference thereto—their practical interpretation of the language and terms thereof—for the purpose of determining who in fact had the possession and enjoyment of the property, and who was entitled thereto under these documents, and who in fact was entitled to and who received the rents and profits of the land before the death of John R. Lamb. The parol evidence rule does not apply to actions between strangers, and if it did there is nothing therein to prevent parties modifying and changing their previous written contracts and agreements, provided these modifications are based upon a consideration or have been fully executed. And as a general rule, the cancellation or modification of the terms and obligations of a written contract, while remaining executory, is sufficient consideration for a subsequent oral one. This is fundamental doctrine. See Page on Contracts, sections 318, 608, 1348, 1339, 1344; *Jones v. Haines,* 117 Iowa, 80. And a fully executed contract will not be disturbed for want of consideration. There is no suggestion of any fraud in the case or of an attempt to avoid the inheritance tax statutes. All obligations on the part of Holmes and wife were fully carried out, and there never was any attempt to declare a forfeiture or to re-enter the premises. If the conveyance was originally upon condition subsequent, it nevertheless passed title, with all rights annexed thereto subject, of course, to be defeated for breach of condition. But some affirmative act on the part of the grantor was necessary to defeat the title conveyed. Under well-known rules, which are not challenged by the Attorney General, the land was not subject to the inheritance tax, and the trial court was right in so holding. No other part of decedent's estate is involved

in this controversy, and we have no occasion to say whether or not it is subject to the tax.

The judgment is right, and it is *affirmed.*