## Frazier's Estate.

*Collateral inheritance tax—Deeds to evade tax—Evidence.*

Where three bachelor brothers, living together and keeping their funds in common, make mutual deeds of real estate in which the consideration is mentioned as one dollar and other valuable con-

siderations, and these deeds are kept in a box where the brothers kept all their papers, and it is acknowledged that the deeds were made for the express purpose of evading the collateral inheritance tax, a delivery of one of the deeds by one of the brothers in the belief of impending death, to another brother, is not sufficient to deprive the Commonwealth of the tax on the interest in the land described in the deed, if it appears that the brother who made the delivery of the deed did not die until four years thereafter, that the deed was not recorded until after his death, and that the three brothers continued to enjoy the benefits of the income from their lands deposited in the common fund, in the same manner as prior to the delivery of the deed.

Argued April 18, 1917.    Appeal, No. 119, April T., 1917, by the Commonwealth, from decree of O. C. Butler Co., Sept. T., 1916, No. 62, sustaining appeal from appraisement for collateral inheritance tax in Estate of James Frazier, deceased.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.    Reversed.

Appeal from appraisement of real estate for collateral inheritance tax.   Before REIBER, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree sustaining the appeal.

*Wm. M. Hargest,* Deputy Attorney General, with him *T. C. Campbell* and *Francis Shunk Brown,* Attorney General, for appellant.—The delivery of the deed was void as against the right of the Commonwealth to collect the collateral inheritance tax: Reish v. Com., 106 Pa. 521.

Even if the deed vested in the grantee to whom it was delivered, a legal title to the interest conveyed to him, there remained in the grantor a right of "enjoyment," sufficient to render the estate conveyed liable to collateral inheritance tax: Del Busto Est., 6 Pa. C. C. R. 289; Com. App., 128 Pa. 603; Meyers's Est., 33 Pa. C. C. R.

Arguments—Opinion of the Court. [67 Pa. Superior Ct.
277; DuBois App., 121 Pa. 368; Reish v. Com., 106 Pa.
521; Commonwealth v. Kuhn, 2 Pa. C. C. R. 248;
Wright's App., 38 Pa. 507; Line's Est., 155 Pa. 378;
Todd's Est. (No. 2), 237 Pa. 466.

*W. B. Purvis,* for appellee.—A man has the right to
convey his property or to take such measures as will pre-
vent his estate meeting the conditions provided by our
statute and becoming subject to the payment of the col-
lateral inheritance tax.

When such a conveyance is made, or such measures are
taken, it is not a question of the purpose, or the intent,
or the motive which actuates a man; it is a question of
what he does; what interest he transfers: Stinger v.
Com., 26 Pa. 422.

OPINION BY ORLADY, P. J., July 13, 1917:

This is an appeal from the decree of the court below
sustaining the appeal of Archibald Frazier from the
appraisement of the real estate of James Frazier for col-
lateral inheritance tax purposes. The facts are free
from dispute, and the testimony of the parties interested
exhibits a degree of candor and frankness that is very
unusual.

James Frazier, John Frazier and Archibald Frazier,
were three bachelor brothers who resided together for
many years. The real estate involved consists of a one-
third interest of a house and lot in Butler Borough,
valued at $12,000, and a one-third interest in a farm of
87 acres in Butler Township, valued at $40 per acre,
($3,480), or $1,160, aggregating $13,160, claimed to be
liable to the collateral inheritance tax.

The title to these properties was held as follows: That
in Butler Borough, known as the homestead, was ac-
quired by James and John in 1857; the three brothers
joined in the purchase of the farm in Butler Township,
in 1866. On March 15, 1885, each brother made a will
devising his individual interest in all of the real estate

to the two other brothers, otherwise,—each will contained exactly the same provisions. On October 20, 1905, the three brothers executed deeds for their interest in this real estate as follows: John deeded his one-half and one-third interest in the borough and township property to James and Archibald jointly; James deeded his one-half and one-third interest in the same property to John and Archibald; Archibald deeded his one-third interest in the borough property to James and John jointly, each deed reciting that it was made for one dollar and other valuable considerations. The deeds were placed in a little tin box in a bureau, where they kept all their papers.

There was no change in the relation of either of the parties to the property, as they continued to live together. Their personal accounts were kept in common, and in the bank in the name of Frazier brothers; the expenses of the farm and house were paid out of the common fund. "It was all in a common fund, it was all together."

James died on June 19, 1914, prior to which time for several years he had been an invalid. Four or five years prior to his death, he delivered the deed that had been formally executed in 1905, to his Brother Archibald. As stated by Archibald Frazier, "It was after he had one of those spells, and he said he wanted to fix up,—that he wasn't going to be here long, and he turned the deed over to me and said, I have no more use for it. He was talking about uncertainty, and he wanted to have me fix the deed. The deed was then delivered, when just the three of us were present in the house."

It does not appear what disposition was made of the respective wills that had been executed in 1885, and the reason given for making the deeds is as frankly stated by Archibald Frazier, as follows: Q. What was the purpose of this deed? A. The principal purpose was to evade the inheritance tax; John came home and said someone told him he ought to make a deed, so when he

dropped off we wouldn't have to pay the inheritance tax, and it was done. Q. Did you have an agreement among yourselves as to when these deeds were to be delivered? A. I don't know that there was; just only what we done ourselves voluntarily. Q. Didn't you expect to hold them until the first brother died, or until about the time he expected to die, and then turn his deed over and so on? A. Well now, I couldn't say that; I know that the principal reason was to try to evade the inheritance tax. Q. Why didn't you deliver the deeds right at the time? At the time the deeds were executed in 1905, isn't it correct that it wasn't the intention of the brothers that there should be any change in the possession or title of these properties until after the death of the first one that died? A. Well now, I don't know what they thought; the principal thing why them deeds was made was to evade the inheritance. Q. You hadn't intended at the time you made that deed to release possession of the property or the title of the properties during your lifetime? A. No, I don't suppose I did. Q. Isn't it correct that James had no intention of doing that? A. I can't tell what their intention was. Q. Didn't you talk about that enough to know what their intention was? A. The principal thought was to evade the inheritance tax." This thought was evidently dominant in the minds of each of the brothers. There was no change in the possession, and as Archibald Frazier states in regard to his own, "I thought I would hold mine as long as I was living."

Section 1, of the Act of May 6, 1887, P. L. 79, as amended by the Act of April 22, 1905, P. L. 258, provides, that all estates, real, personal and mixed, of every kind whatsoever,.......or any part of such estate or interest therein, transferred by deed, grant, bargain or sale, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer,.......shall be and they are hereby made subject to a tax of five dollars on every one hundred dollars of the clear value of such estate or estates, and at and after the same rate for

any less amount to be paid to the use of the Commonwealth.

Following the decision in Reish, Administrator, v. Commonwealth, 106 Pa. 521; Du Bois App., 121 Pa. 368; Todd's Est. (No. 2), 237 Pa. 466, it is apparent from the undisputed testimony, that these mutual deeds were made for the express purpose of evading the payment of the collateral inheritance tax, and that James Frazier enjoyed his interest in the property during his life, as fully as his brother, after executing the deed as he had done before that date. No attempt was made to assert or to exercise any right under the deed during the life time of James Frazier, and it was not put on record until after his death, so that the legal title to the property was in James Frazier at the time of his death for all purposes of appraisement of collateral inheritance tax against it.

The decree of the court below is reversed, the record is remitted with a procedendo.