L. W. TILDEN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3455. Promulgated March 30, 1949.

*Douglas D. Felix, Esq.*, for the petitioner.

*F. L. Van Haaften, Esq.*, and *Newman A. Townsend, Jr., Esq.*, for the respondent.

508

510

512

514

516

OPINION.

LEECH, *Judge*: The basic issue involves the propriety of the respondent's determination that the 1936 transaction whereby petitioner exchanged all its capital stock for the Tilden properties was a nontaxable exchange within the purview of section 112 (b) (5) of the

Revenue Act of 1936, as amended.[1]  Petitioner opposes this determination.  Its position is that the record establishes that the several tracts of land the title to which was conveyed to petitioner by the wife and children of Tilden, respectively, were of unequal value and, since each grantor received an identical stock interest, the provision of section 112 (b) (5) which requires that the amount of stock received by each transferee be substantially in proportion to his interest in the property prior to the exchange has not been met.  The position of petitioner seems to be based primarily on the premises that (1) the warranty deeds from Tilden to his wife and children and from them to petitioner, duly recorded, respectively purporting to convey absolute title to specific property, can not be successfully attacked, and (2) even if such an attack be legally possible, no factual premise exists here, since there is no evidence of any agreement either written or verbal in conflict with the deeds.  We disagree.

It must be noted that the respondent is not a party to any of these conveyances.  Cf. *Haverty Realty & Investment Co.*, 3 T. C. 161. Moreover, we think this record, even though circumstantially, clearly establishes that the grantees in the deeds from Tilden took, with resulting trusts that they held respectively, any excess above their pro rata equal shares in all Tilden's net property, in trust for his other grantees who received less than such shares.  Of course, such a trust is outside the Statute of Frauds and may be established by parol. *Lofton* v. *Sterrett*, 23 Fla. 565; 2 So. 837; *Geter* v. *Simmons*, 57 Fla. 423; 49 So. 131; *McGill* v. *Chappelle*, 71 Fla. 479; 71 So. 836.  These grants from Tilden to his wife and children were primarily made in an endeavor to refinance the grantor's indebtedness.  The formation of petitioner and the exchange of the several tracts of land for its capital stock were planned and carried out to accomplish that same purpose. There can be little doubt that all of the members of the Tilden family understood that L. W. Tilden intended to distribute his properties

---

[1] Section 112 (b) (5) of the Revenue Act of 1936, as amended by section 213 (h) of the Revenue Act of 1939, reads as follows :

"SEC. 112.  RECOGNITION OF GAIN OR LOSS.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"(b) EXCHANGES SOLELY IN KIND.—

\*　　　\*　　　\*　　　\*　　　\*　　　\*

"(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.  Where the transferee assumes a liability of a transferor, or where the property of a transferor is transferred subject to a liability, then for the purpose only of determining whether the amount of stock or securities received by each of the transferors is in the proportion required by this paragraph, the amount of such liability (if under section 213 of the Revenue Act of 1939 it is not considered as "other property or money") shall be considered as stock or securities received by such transferor.  \*　\*　\*"

equally among his wife and children and, notwithstanding the fact that the deeds described tracts of land having varying values, it was understood that the respective interests of the wife and children in the property were to be equal. True, as petitioner argues, there is no evidence of any written agreement to that effect. Nevertheless, the circumstances, including the conduct of the parties subsequent to the conveyances, strongly support the existence of such an understanding at the time the conveyances by Tilden to his wife and children were made and continuing thereafter until, we think, that understanding was executed. Briefly summarizing, this record shows that each deed executed in 1934, except the one to Robert, which was not executed until August 1936, recites that it was "given subject to 1/10 of the outstanding mortgage indebtedness now against the grantor's properties." The ten applications filed with the Land Bank, on which it was hoped a large loan would be secured, contained a statement that the property described "consists of approximately one-tenth (1/10) of the property owned by L. W. Tilden (same being approximately one-tenth (1/10) in amount of value of said property), said property having been recently conveyed to the applicant by L. W. Tilden." The statement also set forth that it was the plan and intention that the properties should be farmed and operated by L. W. Tilden, and that the properties were equipped to be cultivated and cared for as one unit.

For the calendar years 1935 and 1936, L. W. Tilden and his wife filed joint income tax returns, on which results of the operation of all the properties were disclosed. The 1936 return was later subjected to investigation by an internal revenue agent, and a deficiency recommended. The deficiency was protested, and during a subsequent investigation L. W. Tilden and his accountants represented that a joint venture or partnership consisting of Tilden and his wife and eight children operated the farm properties during 1936. The revenue agent agreed to accept a partnership return, which was filed about May 6, 1939. On such return the net operating profit was allocated equally among the members of the joint venture. At the same time L. W. Tilden and his wife and eight children filed original or amended returns for 1936, upon which each reported a one-tenth share of the income disclosed on the partnership return. These returns did not disclose any gain or loss from the transfer of the properties to petitioner in 1936 in exchange for all its capital stock.

Petitioner was organized in October 1936 as another phase of the refinancing plan. The offer of the transferees to exchange the properties for all the capital stock and the assumption of liabilities by petitioner, and the resolution of the directors of petitioner accepting the

same, indicate the transferees were jointly offering to exchange the Tilden properties for an equal share of petitioner's stock. Stock certificates for 100 shares each were executed in the names of the several transferees, but were not detached from the stock certificate book until after the death of L. W. Tilden in January 1941. The required Florida documentary stamps appear to have been canceled on February 28, 1941, and the Federal documentary stamps bear the imprint "Series of 1941," and could not have been attached to the certificate stubs prior to that date.

Virginia Tilden, the youngest daughter, who became 21 during the year 1936, received no deed and was not a party to the exchange. However, after her father's death in 1941, she filed a claim with the Florida probate court asserting ownership of certificate No. 7 for 100 shares which had been issued in the name of her father, L. W. Tilden. The administrator of the estate of L. W. Tilden filed an answer admitting that Virginia was the owner of and entitled to Certificate No. 7, and prayed that an order be entered directing delivery to Virginia of such certificate. The probate court duly entered such an order.

Petitioner was liquidated in 1945. In distributing its assets petitioner executed a warranty deed conveying to Tilden's wife and the nine Tilden children an undivided one-tenth interest in the citrus groves, truck farm lands, and other properties then owned by it.

We think the only reasonable inference to be drawn from this record is that when the conveyances were made by L. W. Tilden to his wife and children, purporting to convey absolute title to the specific properties later conveyed to petitioner, there were resulting trusts in those grantees who received thereunder any excess above their pro rata equal share in all of Tilden's net real property for the benefit of his other grantees who received less than such shares. Petitioner argues that no resulting trusts existed here under the law, since these was a written contract supported by a recited consideration, the receipt of which has not been denied. The answer to that is that the consideration here was recitative and not contractual, and, therefore, parol evidence was admissible to establish the resulting trusts. *Johnson* v. *Johnson*, 14 S. W. (2d) 805. Moreover, when each of Tilden's grantees formally conveyed to petitioner the property which the deeds from Tilden purported to convey to them and, in return, each received a one-tenth interest in the stock of petitioner, these resulting trusts became executed, and any frailties in their original creation were cured. *Lamb's Estate* v. *Morrow*, 140 Iowa 89; 117 N. W. 1118; *Robertson* v. *Gardner*, 28 Mass. 146.

We, therefore, conclude that in the 1936 transaction the transferees received stock exactly in proportion to the value of the properties con-

tributed by each to petitioner. The exchange was a nontaxable transaction within the purview of section 112 (b) (5) of the Revenue Act of 1936, as amended.

In view of this conclusion, the alternative issue relating to depreciation on the citrus groves becomes moot.

*Decision will be entered under Rule 50.*