IN RE ESTATE OF WAYNE CHOATE.

**TAXATION: Collateral Inheritance—Oral Purchase For Consideration.**
1   On the issue whether a devise of a farm is subject to a collateral inheritance tax, the devisee may show that, prior to the probate of the will, he in effect bought and went into possession of the farm, under an oral agreement that the consideration to be paid should be the life support of the grantor and his wife; and the filing of the will for probate by the devisee does not necessarily work an estoppel to rely on said oral contract.

**WITNESSES:   Competency—Transaction With Deceased—Testimony**
2   **Against State.** On an application by the treasurer of state to have a collateral inheritance tax assessed against a devise of real estate, the party claiming said real estate is a competent witness to prove an oral contract with the deceased testator under which claimant bought and went into possession of said land long prior to the probate of the will.

*Appeal from Mills District Court.*—E. B. WOODRUFF, Judge.

APRIL 3, 1923.

PROCEEDING in probate, for the taxation of a collateral inheritance tax. The court below found against the state treas-

urer, in whose name the application was made, and he appeals.—
*Affirmed.*

*Ben J. Gibson,* Attorney-general, *B. J. Powers,* Assistant
Attorney-general, and *Carl H. Cook,* County Attorney, for
appellant.

*John Y. Stone* and *C. E. Dean,* for appellees.

STEVENS, J.—Wayne Choate died testate in Mills County,
Iowa, on or about May 27, 1912, and his wife, Elizabeth E.
Choate, in 1918. The transfer involved is of a, farm of 187 acres,
located in Mills County. This farm Wayne
Choate devised to William Francis Choate, sub-
ject to the payment of the net annual income
therefrom to Elizabeth Choate as long as she
should live. The will further provided that, in the event Eliza-
beth Choate outlived William Francis Choate, then one half
of the farm be devised to her, and the remainder to the surviv-
ing children of William Francis Choate, said children to go into
possession thereof upon the death of Elizabeth. William Francis
and Elizabeth Choate were named as executors, both qualify-
ing as such upon the death of the testator, and William Francis
has acted as sole executor since the death of the widow. Wil-
liam Francis Choate was not related to testator, but an attempt,
which failed, was made to adopt him when he was two years of
age. William Francis resided with Wayne and Elizabeth
Choate upon the farm until he was a young man, when they
moved to Glenwood. When he married, he continued to reside
upon the farm until about three years before the trial below,
when he and his family also took up their residence in Glen-
wood. The will was presented for probate by William Francis.
The executor failing to report the estate for the assessment of a
collateral inheritance tax, the treasurer of state, on June 14,
1921, filed an application in the office of the clerk of the district
court of Mills County, asking that an order requiring the said
Choate, in his personal and official capacity as executor, to
appear and show cause why the estate was not subject to the
payment of a collateral inheritance tax be issued, and that notice
fixing time for such hearing be served upon him. In response

1. TAXATION:
collateral
inheritance:
oral purchase
for consideration.

to this application and the order of the court, appellee appeared, and filed an instrument in writing, setting up, as his excuse for the failure to report the transfer for assessment of the tax, that the testator, in 1894, or 1895, gave the farm to him, in consideration of his support, care, and maintenance of testator and his wife as long as they should live; that he immediately entered into possession thereof under the agreement, which was oral, and that he from that time forward occupied, controlled, and managed the farm, claiming to be the absolute owner thereof; that he fully discharged all of his obligations under the contract; that he has at all times since been the owner of the equitable title to said premises; and that same is not subject to the tax.

Appellee was also examined orally, under oath, and testified that, just preceding the oral agreement entered into by him with the testator, he had an opportunity to go into the mercantile business at Spearfish, North Dakota, and contemplated doing so; but that, when he informed Wayne Choate of his contemplated purpose, the former urged him to stay upon the farm; and that it was then that the arrangement above referred to was consummated between them. His wife testified to substantially the same matters as her husband. Appellee further testified that he at no time paid rental for the premises to testator, but gave him such sums annually (sometimes more and sometimes less than the fair rental value of the land) as the testator, or Elizabeth Choate, after his death, requested of him.

The testimony of these witnesses is not disputed, except as the execution of the will by Wayne Choate, the devise of the farm to William Francis, subject to the provisions mentioned above, the presentation of the will for probate by him, and his qualification and assumption of the duties of executor of the estate, may be circumstances inconsistent with or contradictory of his oral testimony. Appellee further testified that the relations between himself and testator and his wife were always kindly; that they never had any children; and that they treated appellee in all respects as their son. A clause in the will is somewhat corroborative of this claim:

"The William Francis Choate named herein, commonly called Frank Choate, was taken by me upon the death of his

parents when he was very young and I thought by the proceeding then done that I had legally adopted him, and I have raised him in my family as an only son and from his faithfulness to me and in token of my love and affection to him I desire to treat him in the disposition of my property as if he were my son.''

Basing its holding upon the facts as outlined above, the court found specifically that the oral contract was entered into and carried out between the testator and appellee, as claimed by the latter. The finding of the court upon these questions of fact, which have support in the evidence (unless the testimony of appellee should be excluded under Code Section 4604, which will be considered later), has the same weight and effect as the verdict of a jury, and we cannot interfere therewith. *McEwen v. Fletcher,* 164 Iowa 517; *Harter v. Harter,* 181 Iowa 1181; *In re Estate of Doore,* 183 Iowa 152. The appeal, therefore, presents questions of law only for decision.

Four propositions are relied upon by appellant for reversal: (1) That appellee was estopped, as a matter of law, from claiming title to the farm under the alleged oral contract; (2) that neither he nor his wife was, under Section 4604 of the Code, competent to testify to the oral contract with the testator; (3) that transfer was void because within the statute of frauds; (4) that the transfer of the title to the property was consummated by the will, and therefore comes within the provisions of Section 1481-a, Code Supplement, 1913, and is subject to the tax.

Appellant's plea of estoppel is based upon the presentation of the will for probate by the appellee, his acceptance of the appointment as executor of the estate and the administration thereof by him, and the carrying out of the terms of the will. The above matters are evidential in character, and have weight in testing the truth of appellee's testimony, rather than the character of an estoppel. The State was in no wise prejudiced nor induced to change its position by the conduct of appellee. Collateral inheritance taxes are imposed upon the transfer of property only, and not upon the property itself. It is purely an excise tax. It is no concern of the taxing authorities', or of the officers charged with the duty of the assessment and collection thereof, how appellee obtained title to the farm, except

as the right to tax the transfer is affected thereby. If appellee acquired title to the farm in 1894 or 1895, in the manner claimed by him, then, of course, the transfer is not taxable. The will devised the farm to appellee absolutely, if he survived Elizabeth. His conduct in presenting the will for probate and securing the administration of the estate under the terms thereof, although it may possibly be inconsistent with the claim he now asserts, did not change his position or that of any other person in relation to the property, so long as he lived. If he acquired title to the farm in the manner claimed, the will operated only to complete the record title. He testified that he understood such to be the effect of the will, and assumed that this was the method chosen by Wayne Choate to convey the legal title to him. So far as is shown by the record, no claims of creditors were ever filed against the estate. The finding of the court below upon the facts is binding upon this court, unless we should hold, as a matter of law, that the title to the property passed under the will, instead of under the oral contract and possession assumed thereunder. If the title, possession, and full enjoyment of the property passed under the oral contract, then nothing was left in the testator to pass under the will, except the naked legal title; and the estate is not subject to the tax. *In re Estate of Lamb v. Morrow,* 140 Iowa 89.

It may be conceded, as we held in *In re Estate of Lamb v. Morrow,* supra, that the owner of an estate cannot defeat the payment of a tax by any devise which secures to him for life the income, profits, or enjoyment thereof. That title to real estate may be transferred by oral contract, where possession is taken by the purchaser thereunder, is too well settled to require the citation of authorities. If the transfer was effective as between the parties, it is, of course, binding upon the State. Adopting as correct the conclusion of the court below upon the facts, we see no escape from the judgment exempting the estate from the payment of the tax. We recognize that the execution of a will by Wayne Choate and the assumption of ownership therein are strong circumstances against any understanding on his part that he had parted with the title years before; but these matters were doubtless taken into consideration by the court below, in arriving at the conclusion announced.

But one further question remains for our consideration, and that is: Were appellee and his wife competent witnesses, under Section 4604 of the Code, to testify to the alleged oral agreement with testator? It seems to us that there can be no doubt upon this point. Appellee was the executor of the estate, and the proceeding is not, in the language of the statute, "against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or guardian of such insane person or lunatic." Appellant did not, in this proceeding, stand in the relation of any of these. The witnesses were clearly competent. We have not referred to any of the authorities cited by appellant, for the reason that they are not in point. The facts of this case clearly distinguish it from *Matter of Gould*, 156 N. Y. 423 (51 N. E. 287), *Carter v. Craig*, 77 N. H. 200 (90 Atl. 598), *State v. Mollier*, 96 Kan. 514 (152 Pac. 771), and we do not deem it necessary to point the same out in this opinion.

*2. WITNESSES: competency: transaction with deceased: testimony against State.*

It follows that the order and judgment of the court below must be—*Affirmed.*

PRESTON, C. J., FAVILLE and DE GRAFF, JJ., concur.