STATE AND CITY BANK AND TRUST COMPANY, COEXECUTOR OF THE ESTATE OF WILLIAM M. HABLISTON v. R. A. DOUGHTON, COMMISSIONER OF REVENUE.

(Filed 19 December, 1924.)

**Taxation—Inheritance Tax—Statutes—Trusts.**

> Where the nonresident owner of shares of stock in a North Carolina corporation incorporates them in a trust terminable by him at his own will at any time, and retains the control and enjoyment of the profits thereof with right to vote the same by proxy whenever he may so elect, and dies without revocation thereof, the same is subject to the inheritance or transfer tax provided by chapter 34, Public Laws 1921, under the provisions of a valid statute.

APPEAL by plaintiff from *Horton, J.,* at September Term, 1924, of WAKE.

Civil action to recover the amount of an inheritance tax, or transfer tax, paid by plaintiff, coexecutor of the estate of W. M. Habliston, deceased, and sought to be regained by this suit.

From a judgment denying recovery, the plaintiff appeals.

*John H. Boushall for plaintiff.*
*Attorney-General Manning and Assistant Attorney-General Nash for defendant.*

STACY, J. The State and City Bank and Trust Company, of Richmond, Va., coexecutor under the will of W. M. Habliston, deceased, brings this suit to recover of the defendant, Commissioner of Revenue of North Carolina, the sum of $2,331.98, being the amount exacted by the defendant and paid by plaintiff, by way of an inheritance tax, or a transfer tax, on 2,937 shares of stock in the Roanoke Rapids Power Company, a corporation chartered under the laws of North Carolina,

with its principal place of business located in this State. The statute under which the tax in question was imposed, ch. 34, Public Laws 1921, provides that an inheritance tax shall be levied and collected upon the succession or devolution of all real and personal property of every kind and description, and "such property or any part thereof or interest therein within this State," which shall pass by will or by operation of law from a testator to his legatees or devisees, or from an intestate to his heirs or distributees, and section 6 of said act, in part, provides as follows: "From and after the passage of this act all real and personal property of whatever kind and nature which shall pass by will or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State, whether the person or persons dying seized thereof be domiciled within or out of the State (or if the decedent was not a resident of this State at the time of his death, such property or any part thereof within this State), or any interest therein or income therefrom which shall be transferred by deed, grant, sale, or gift, made in contemplation of the death of the grantor, bargainor, donor, or assignor, or intended to take effect in possession or enjoyment after such death, to any person or persons or to bodies corporate or politic, in trust or otherwise, or by reason whereof any person or body corporate or politic shall become beneficially entitled in possession or expectancy to any property or the income thereof, shall be and hereby is made subject to a tax for the benefit of the State, as follows, that is to say; (Rate and amount of tax not in dispute):

"The words 'such property or any part thereof or interest therein within this State' shall include in its meaning bonds and shares of stock in any incorporated company incorporated in this State, regardless of whether or not any such incorporated company shall have any or all of its capital stock invested in property outside of this State and doing business outside of this State, and the tax on the transfer of any bonds or shares of stock in any such incorporated company owning property and doing business outside of this State shall be paid before waivers are issued for the transfer of such bonds or shares of stock as hereinabove provided for."

We had occasion to consider the nature and character of a similar tax in the case of *Trust Co. v. Doughton,* 187 N. C., 263. It would only be a work of supererogation to repeat here what has been so recently said there, and we content ourselves by referring to that case for a discussion of the principles involved. It clearly appears, from the language of the statute, that the Legislature intended to levy an inheritance tax, or transfer tax, on the succession or devolution of stock in domestic corporations, whether held by a resident or non-resident at the time of his death. The power of the State to impose

such a tax is not questioned in the present action. The dispute arises over whether the case comes within the purview of the above provisions.

The essential facts upon which the instant case pivots and which were admitted on the hearing, are as follows:

1. W. M. Habliston, a resident of the state of Virginia, died on 9 March, 1922, leaving a last will and testament in which he appointed his wife and the Old Dominion Trust Company coexecutors. The Old Dominion Trust Company merged with another corporation and changed its name to the State and City Bank and Trust Company, which last named corporation is the proper successor to the Old Dominion Trust Company, as coexecutor of said will.

2. On 9 July, 1915, W. M. Habliston executed a trust agreement whereby he assigned, transferred and conveyed to the Union Trust Company of New York, among other securities, 2,937 shares of stock in the Roanoke Rapids Power Company, a North Carolina corporation; and in which said trust agreement W. M. Habliston reserved for himself the power to revoke, alter or otherwise modify or terminate the same at any time at his option.

3. It was further provided in said trust agreement that the trustee should not sell or otherwise dispose of any of the stock in question without the grantor's written consent, and he specifically reserved to himself the right to vote such shares of stock at any and all meetings of the corporation. Section 2 of the original trust agreement is as follows:

"The trustee will, if requested so to do by the grantor, his representatives or assigns, execute all proxies necessary or proper to enable the grantor, his representatives or assigns, to vote in place of the trustee at any meeting of the stockholders of the companies issuing said shares of stock."

In section 3 the grantor promises to indemnify the trustee against all calls, assessments and other demands upon this stock.

4. On 6 February, 1918, W. M. Habliston executed an amendment to the original trust agreement incorporating in said amendment, among others, the following provision: "I also amend said indenture by providing that the trustee shall invest any money in its hand as such trustee in accordance with my written directions."

5. Other amendments were made to said trust agreement under authority reserved in the original deed, but the provisions of these amendments are not presently material. There was no revocation of the trust during the lifetime of the grantor.

6. The record fails to disclose what per cent of the grantor's estate was conveyed by said trust agreement, or in whose name the stock in the Roanoke Rapids Power Company appears on the books of the

corporation, but it is fairly permissible to conclude that the stock stands in the name of the trustee. These matters, however, are not controlling in the view we take of the trust agreement and amendments thereto.

Plaintiff contends that the 2,937 shares of stock in the Roanoke Rapids Power Company constitute no part of the estate of W. M. Habliston, as said stock had been assigned, transferred and conveyed to the Union Trust Company of New York, trustee, in 1915, nearly seven years prior to the grantor's death, and that, therefore, the tax exacted by the defendant is illegal and should be refunded. For this position, plaintiff relies upon the following decisions: *In re Bowers' Estate,* 186 N. Y. Supp., 912; *In re Carnegie's Estate,* 186 N. Y., Supp., 502; *In re Grogan's Estate,* 219 Pac. (Cal.), 87; *In re Miller's Estate,* 140 N. E. (N. Y.), 701; *In re Schmidlapp's Estate,* 140 N. E. (N. Y.), 697; *In re Dolan's Estate,* 124 Atl. (Pa.), 176.

The defendant, on the other hand, takes the position that the right of the beneficiary, under the trust deed, never became absolute until the death of the grantor, because he at no time, prior to his death, parted with his control and use of the property. We think the defendant has correctly interpreted the trust agreement, and that the transfer, in the instant case, comes within the provisions of sec. 6 above set out, subjecting it to a tax for the benefit of the State.

Under the provision that any transfer by deed, grant, sale, or gift, "made in contemplation of the death of the grantor, bargainor, donor, or assignor, or intended to take effect in possession or enjoyment after such death," shall be subject to a tax for the benefit of the State, it is necessary, in order to escape the tax, to show such a conveyance as parts with the possession, title and enjoyment in the grantor's lifetime. *Reish v. Comrs.,* 106 Pa., 521. And when a transfer is made or intended to take effect in possession or enjoyment after death, and the grantor retains a grasp of the entire estate so long as he lives, as is the case here, it cannot be said absolute possession or enjoyment in the beneficiary takes effect prior to death. Under such conditions, the State is entitled to collect a tax on the transfer. Such is the language of the statute.

In the present case, W. M. Habliston reserved such numerous and extensive powers over the properties, transferred by him, as to preclude a permissible or inferential intent on his part that they were to take effect in absolute possession or enjoyment before his death. The authorities cited by appellant are cases where such control had passed from the grantor, reserving only the power of revocation, which was never exercised. "The power of revocation in a deed is equivalent to the power of appointment; neither prevents the passing of title or the complete enjoyment of the thing granted." *In re Dolan's Estate, supra.*

Interpreting a similar conveyance in the case of *In re Bostwick,* 160 N. Y., 489, the New York Court of Appeals, speaking through *Gray, J.,* said:

"The reserved power to revoke would enable him (grantor), of course, to put an end to the trust; but that was not enough to affect the possession of the trustee, or the beneficial enjoyment of the object of the donor's bounty, while the trust was in force, and such a power carried with it no control over the property or its management. . . . Instead of an out and out gift, which would provide for the enjoyment by the beneficiary of the income of the property during her life and for the disposition of the trust fund thereafter, we find powers reserved to alter, or amend, the trust by notice of the trustee; to withdraw, or to exchange, any securities, and to control the acts of the trustee in selling, or disposing of, the securities, or with respect to investments. All these are *indicia,* rather, of an intention on the donor's part to retain a dominion over the properties transferred, and do not consist with an existing purpose to vest the absolute right to present and future enjoyment in the beneficiaries. He retained practical control of the trust property and left the question of its beneficial enjoyment and eventual possession open until his death."

By correct interpretation of the present trust agreement, with its several amendments, we are of opinion that the 2,937 shares of stock in the Roanoke Rapids Power Company should be held liable to a tax for the benefit of the State, under ch. 34, Public Laws, 1921. This accords with the judgment entered below, which will be upheld.

Affirmed.