IN RE ESTATE OF JENNIE BRUNK SAYRES.

FRANK UTT, petitioner-appellee, v. STATE TAX COMMISSION, respondent-appellant.

No. 48272.

(Reported in 60 N.W.2d 120)

SEPTEMBER 22, 1953.

REHEARING DENIED NOVEMBER 20, 1953.

Leo A. Hoegh, Attorney General, Henry W. Wormley, Special Assistant Attorney General, of Des Moines, for appellant.

D. W. Harris, of Bloomfield, for appellee.

MULRONEY, J.—On December 31, 1943, Jennie Brunk Sayres transferred her farm to her half brother, Frank Utt, by a warranty deed which recited "one dollar and other valuable consideration" and which further provided: "the grantor, Jennie Brunk Sayres, hereby reserves a life estate in and to the above described real estate for the remainder of her natural life."

There was oral testimony that at the time of the transfer Frank Utt agreed to support and care for Mrs. Sayres for the rest of her life. There was also testimony that Mrs. Sayres, at the time of the delivery of the deed, intended to give grantee immediate possession without his paying any rent or income from the property to her under her reserved life estate so long as he fulfilled his support contract, and evidence that grantee did perform his support contract well until Mrs. Sayres' death on March

28, 1946. The grantee had long been a renter of the property but after the deed and support contract Mrs. Sayres never asked for nor received farm rent or income during her lifetime. The trial court appraised this evidence, and we think correctly, as establishing that the life estate was retained in the deed "so that Mrs. Sayres would have some right to the income from the property in the event that Frank Utt, grantee, predeceased her and was thus prevented from fulfilling his promise to support Mrs. Sayres for life."

The Commission claimed a succession tax was due by reason of section 450.3, Code of Iowa, which provides:

"The tax hereby imposed shall be collected upon the net market value * * * of any property passing: * * *

"3. By deed, grant, sale, gift or transfer made or intended to take effect in possession or enjoyment after the death of the grantor or donor. A transfer * * * in respect of which the transferor reserves to himself a life income or interest shall be deemed to have been intended to take effect in possession or enjoyment at death, provided, that if the transferor reserves to himself less than the entire income or interest, the transfer shall be deemed taxable thereunder only to the extent of a like proportion of the value of the property transferred."

The trial court decreed no tax was due and the Commission appeals.

I. The obvious purpose of section 450.3, Code, 1950, including in the estate to be taxed property transferred by decedent, with provision for retention of life possession and enjoyment in the transferor, is to reach substitutes for testamentary disposition and thus prevent evasion of inheritance tax. Some similar provision will probably be found in the inheritance or estate tax law of all states and much the same provision is in the federal estate tax law. See U. S. C. A., Title 26, section 811.

The statute is so common today and it has had such a long and challenging history in the courts that it possesses a name given to it by opinion and law review writers, to wit, the "possession or enjoyment" provision. An article in 56 Yale L. J. 176 (1946) traces the origin of the provision, and some of the early

history is recounted by Mr. Justice Black in Commissioner of Internal Revenue v. Estate of Church, 335 U. S. 632, 637, 69 S. Ct. 322, 325, 93 L. Ed. 288, 294, as follows:

"The 'possession or enjoyment' provision appearing in section 811(c) seems to have originated in a Pennsylvania inheritance tax law in 1826. As early as 1884 the Supreme Court of Pennsylvania held that where a legal transfer of property was made which carried with it a right of possession with a reservation by the grantor of income and profits from the property for his life, the transfer was not intended to take effect in enjoyment until the grantor's death: 'One certainly cannot be considered, as in the actual enjoyment of an estate, who has no right to the profits or incomes arising or accruing therefrom.' Reish, Adm'r v. Commonwealth, 106 Pa. 521, 526. That court further held that the 'possession or enjoyment' clause did not involve a mere technical question of title, but that the law imposed the death tax unless one had parted during his life with his possession and his title and his enjoyment. It was further held in that case that the test of 'intended' was not a subjective one, that the question was not what the parties intended to do, but what the transaction actually effected as to title, possession and enjoyment.

"Most of the states have included the Pennsylvania-originated 'possession or enjoyment' clause in death tax statutes, and with what appears to be complete unanimity, they have * * * substantially agreed with this 1884 Pennsylvania Supreme Court interpretation."

Because there exists the natural desire on the part of property owners to avoid the imposition of a tax on the estates they may leave it was necessary to reach transfers, resorted to as a substitute for a will, making disposition of property operative at death of the transferor. As early as 1909 the New York Court of Appeals in the case of In re Estate of Keeney, 194 N.Y. 281, 287, 87 N.E. 428, 429, said: "It is true that an ingenious mind may devise other means of avoiding an inheritance tax, but the one commonly used is a transfer with reservation of a life estate."

Many conveyances designed to retain some economic benefits for the grantors for life in the property transferred have been before the courts. Quite early the device of transfers in trust was employed. The simple trust transfers, designed to distribute the corpus at the settlor's death with reservation of life income to the settlor, were always held taxable in all of the state courts under the possession and enjoyment provision. There was a period of time when May v. Heiner, 281 U.S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244, was in force, when such trust transfers were held not taxable under the federal estate tax law, but May v. Heiner was not followed by any state court and it was expressly overruled by the Commissioner of Int. Rev. v. Estate of Church (1949) supra. The trust transfers have no effect whatever on the issue of taxability and they are mentioned because so many cases announcing basic principles involve trust transfers. We held in In re Estate of Toy, 220 Iowa 825, 828, 263 N.W. 501, 503, that our possession and enjoyment provision was directly applicable to a trust transfer which reserved to the grantor the net annual income of the property conveyed to trustees. In that opinion we said: "That a conveyance directly to the beneficiary with reservation to the grantor of a life estate or full use and control during grantor's life, or a conveyance in trust for grantor during his life falls within the meaning of transfers 'intended to take effect after death of the grantor or donor' and that such transfers are the very type that such inheritance tax statutes are intended to reach has been held in numerous jurisdictions." (Citing cases)

II. The decision in the instant case involves no discussion of those cases where some indirect method was employed in order to secure tax avoidance. It is the simple case where the life estate is reserved by the very instrument that created the remainder, which has invariably been held taxable under the possession or enjoyment provision.

In Harber v. Whelchel, 156 Ga. 601, 119 S.E. 695, the deed reserved to the grantor " 'the full use and control of the * * * property * * * during his natural life.' " The opinion holds the transfer taxable "by the very letter" of the possession and enjoyment provision of the inheritance tax law.

In The People v. Estate of Moir, 207 Ill. 180, 190, 69 N.E. 905, 908, 99 Am. St. Rep. 205, where the transfer by the father was to a partnership composed of himself and his sons and it was argued there was no reservation in the deed, the holding was there was a partial postponement of enjoyment equal to the father's interest in the partnership but in discussing the issue the court said: "If the rents from the lands had been reserved by Robert Moir, during his life, *in the deed or by other writing*, it would be plain that the deed was not intended to take effect in possession or enjoyment during the life of the grantor." (Italics supplied.)

In In re Estate of Schuh, 66 Mont. 50, 61, 212 P. 516, 519, the mother transferred to her children, stocks, bonds, mortgages, and certificates of deposit, and on the same day the children executed a trust agreement whereby they delivered the property to a trust company, the agreement providing the income was to be paid to the mother as long as she lived. The court held the two agreements were to be construed together, and, when so construed, the transaction "falls within the exact provisions of the statute relating to transfers to take effect in possession or enjoyment at the death of the donor, and was therefore subject to the tax." (Citing cases)

In Kimball v. Potter, 89 N. H. 234, 235, 236, 196 A. 272, 273, 274, it was argued that an irrevocable trust transfer, where income was reserved to the settlor for life, "took effect in possession and enjoyment when the trust property was delivered to the trustees * * *." The opinion holds "the argument commands little respect. * * * the transfer is taxable under a literal reading of the statute." The opinion goes on to say: "Statutes in other states with language nearly, if not exactly, identical with that here enacted have received a like construction, it is believed, in all instances where the question has been presented. The cases are cited in annotations in 49 A. L. R. 864, sub. IV, and 100 A. L. R. 1244, sub. IV."

In In re Estate of Green, 153 N. Y. 223, 227, 228, 47 N.E. 292, 293, Sarah Green transferred $200,000 of railroad stock to a trustee who was to pay her the income for her life and after her death give the stock to her nieces. In holding the transfer taxable the court said it was unimportant to determine whether

the trust instrument was made in contemplation of death or whether the nieces received a vested remainder. The opinion states: "We think it quite clear that the remainders were transferred to the nieces, in possession or enjoyment, by an instrument intended to take effect for that purpose, at or after the death of the donor, and so the case is brought within the terms of the statute. * * *. The death of the donor was the event which made the transfer complete and effective and secured to the nieces the possession and enjoyment of the property."

In Commissioner of Internal Revenue v. Estate of Church, 335 U. S. 632, 646, 69 S. Ct. 322, 330, 93 L. Ed. 288, 299, where the trust transfer reserved the income to the settlor, the court stated: "There may be trust instruments that fall more clearly within the class intended to be treated as substitutes for wills by the 'possession or enjoyment' clause, but we doubt it."

Many more cases could be cited for what is apparently the universal rule that the transfer is taxable under the possession and enjoyment provision when the transfer instrument expressly reserves income to the transferor for life. In addition to the A. L. R. citations in Kimball v. Potter, supra, more cases will be found in 67 A. L. R. 1250–1254. The foregoing cases were selected, for citation, from the numerous cases that could be cited, merely because the opinions contain some emphatic language suggesting the courts have no difficulty at all when the instrument of transfer expressly reserves income for the transferor's life. And we have recognized this unanimity of authority for in Brown v. Gulliford, 181 Iowa 897, 899, 900, 165 N.W. 182, 183, we said: "It is well settled that reservation of a life estate is such postponement of possession and enjoyment as that the tax attaches, under such a statute as we have."

III. Everyone would concede that in the instant case there was probably no intent to evade the tax. But, as pointed out in Brown v. Gulliford, supra, one could concede the parties "were in fact ignorant of the very existence of an inheritance tax law" and the fact would be immaterial. It is the type of transfer that is being taxed and the intent of the parties is immaterial. We said in the same Brown v. Gulliford case: "* * * it is unquestionable it [the legislature] has the power

to put a succession tax upon those who receive a deed *in praesenti*, with such a reservation in the grantor as is found in the deed here [life estate in grantor]. * * * That is to say, though the grantee in such deed becomes the owner upon delivery of the deed in such sense that his title may be the subject of levy and seizure, and that only time is wanting to make a title which includes the right to possession and enjoyment, the legislature may subject him who takes such a conveyance to a collateral inheritance tax."

IV.  The main argument in support of the trial court's decree is based on the intent of Mrs. Sayres as established by the oral testimony.  We can waive all questions as to the admissibility of this evidence and accept the trial court's finding that this evidence establishes she reserved the life estate as security for the promised support and care by the grantee during her lifetime.

In the first place, as pointed out earlier in the quotation from Commissioner of Int. Rev. v. Estate of Church, supra, the question is "not what the parties intended to do, but what the transaction actually effected as to title, possession and enjoyment."

As stated in In re Estate of Hyde, 92 Cal. App. 2d 6, 14, 206 P.2d 420, 425: "Liability * * * does not turn upon the intention of the grantor, but upon the character of the interests created by the transfer."

In the second place, under the admitted intention of Mrs. Sayres the life income she reserved is identifiably tied up with the support contract and that fact alone would render the transfer taxable.

One device frequently employed by conveyancers to accomplish the result of a conveyance that would reserve possession and enjoyment in the transferor and still leave the transfer untaxed is the annuity contract.  The courts have been alert to prevent tax avoidance by resort to this method where the payments the grantee makes to the grantor for life have a close relation to the income of the property transferred.  Here, there was the reservation in the deed which left the income subject to the grantor's disposition for life.  The trial court expressly

found the relationship between the reserved life income and the support payments and services grantee was to perform—a security relationship. The agreement to support the grantor is "identifiably tied up with" her reserved life estate. Fidelity Union Trust Co. v. Martin, 118 N. J. L. 277, 192 A. 74. If the grantee preceded the grantor in death or refused to carry out the support contract the reserved life income was to succeed the support contract. She held a string on the income that was not to be relinquished until her death. The full right of possession and enjoyment was not to be the grantee's until the grantor's death.

Courts have gone much farther in the annuity type of case in holding transfers taxable than is called for in the present case. In Avery v. Walsh, 138 N. J. Eq. 80, 82, 87, 46 A.2d 912, 914, 916, a father transferred to his son and daughter a large amount of stocks and bonds and other securities and the children signed a contract to give their father " 'a comfortable home and support, treat him kindly and respectfully and maintain him, giving him food, clothes, nursing and medical attention * * * spending money not to exceed $100 a month' * * *." The father did not reserve the life income from the property transferred (the opinion indicates it was about $100,000 worth of securities) but the court had no difficulty in finding the connection between the children's obligation and the transferred property. The opinion states: "Circumstantially it may be inferred that the income from the corpus of the transfer was expected to be the source from which Irving and Marion would acquire the financial ability to discharge their obligations to their father under the agreement of 1932. * * *. The evidence points rather to the conviction that the transfer was not absolute, immediate, and unqualified, but that it was itself encumbered by obligations of the donees, the performance of which was dependent upon the transfer and its fruits. It does not seem to me that the obligations of the donees were entirely independent of the transferred property [citations]."

There are many cases like the Avery case. Many are cited in the above opinion and many more will be found cited in the opinion in In re Estate of Hyde, supra. It is hardly necessary

to discuss these authorities for in all of them the court is seeking a solution *when the transfer was in form absolute—without any reservation of a life income.* They merely illustrate how far the courts will go to find that which is here conceded but once they find what is here admitted, the tax attaches as a matter of course.

The Hyde case is interesting for it emphasizes what the opinion calls "the modern realistic view" to prevent tax evasion. There, Ida Hyde made several gifts to Johns Hopkins University and the University agreed to pay her a fixed sum for life. The following quotations from the opinion show how far the courts will go to peer through ingenious forms of transfers to discover that which amounts to the transferor's retention of the economic benefits of the transferred property. It is interesting to note that the opinion starts the discussion with what is admitted in the instant case—the transfer with reservation. The opinion states at page 16 of 92 Cal. App.2d, page 426 of 206 P.2d: "If the original agreement had reserved the net income of the fund to Ida, there would be no doubt that the transaction would be taxable inasmuch as the full enjoyment of the fund by the University would then clearly have been postponed until the death of the donor."

But the transfer in the Hyde case, unlike the transfer we have before us, did not contain any reservation. The annuity the University agreed to pay was an amount equal to five and six per cent of the various donations. The opinion goes on to hold: "In form, the transaction was a complete transfer of the fund, with an independent agreement by the University to pay a fixed sum for life to the donor. * * * It is equally clear that, from a practical standpoint, the parties intended and expected that the donated fund would create the income to be paid to the donee. From a practical and realistic standpoint, the case is simply one where the donee has reserved the net income to the fund for life. This being so, the transfers are taxable under the sections already mentioned."

Appellee cites the holding in Brown v. Gulliford, supra, where there was a deed with a reserved life estate in the grantors. That opinion recognizes (page 900 of 181 Iowa) that "if this were all, we should hold that the tax was due because a life estate

was reserved \* \* \*." But there was another instrument later executed by the parties by which the remainderman went into possession and agreed to pay the life tenants a certain sum each year as long as they lived, and the court held this was an exchange of the life estate for an annuity and consequently the right to immediate possession and enjoyment vested in the remainderman before the death of the grantors, with no strings attached. Accepting the conclusion that the second transaction amounted to an exchange of a life estate for an annuity with no encumbrance on the life estate, the decision is sound. But the case is not authority for the instant case. Here the reserved life estate was not relinquished or exchanged. It was retained as a right exercisable by the transferor the rest of her life if (under the parol evidence) the grantee predeceased grantor or failed to live up to his agreement to support her.

In re Estate of Lamb v. Morrow, 140 Iowa 89, 95, 117 N.W. 1118, 1121, 18 L. R. A., N. S., 226, which is cited by appellee, also recognizes the general rule: "It is no doubt true that the owner of an estate cannot defeat the tax by any device which secures to him for life the income, profits, or enjoyment thereof. The conveyance must be such as passes the possession, the title, and the enjoyment of the property in the grantor's lifetime."

In the Estate of Lamb case there was a written deed and contract and the opinion holds there was much ambiguity in the instruments and the parol evidence established there was no reserved life estate, that there was a complete transfer in grantor's lifetime of possession and enjoyment and consequently no tax was due. Again, accepting the interpretation the court placed on the transaction, the case is not in point, for here it is conceded there was a reserved life estate.

It matters not that the donor did not exercise that right she reserved. State and City Bank and Trust Co. v. Doughton, 188 N. C. 762, 125 S.E. 621. As was said in In re Estate of Madison, 26 Cal.2d 453, 457, 159 P.2d 630, 633:

"The issue is not whether the donor retained some power or interest until his death, but rather whether he tied up the property with so many strings, which could not be loosened until his death, that the transfer may be regarded as having been in-

tended to take effect in possession or enjoyment at his death within the meaning of the statute."

Again we stress the fact that there is no evidence of intent to evade the tax in the instant case. But that fact is immaterial. It is a tax case, and all tax decisions have effect on subsequent decisions beyond the limited area of the specific issues decided. Were we to sanction this transfer where no tax evasion was intended, we would be providing a loophole where tax avoidance could be secured and the transfer tax defeated. The decree of the trial court is reversed.—Reversed.

HAYS, C.J., and BLISS, OLIVER and THOMPSON, JJ., concur.

SMITH, WENNERSTRUM and GARFIELD, JJ., dissent.

LARSON, J., takes no part.

SMITH, J. (dissenting)—I. I cannot conclude this transfer is taxable under our statute. Section 450.3, Code of 1950, provides:

"The tax hereby imposed shall be collected upon the net market value * * * of any property passing: * * *

"3. By deed, grant, sale, gift or transfer made or intended to take effect in possession or enjoyment after the death of the grantor or donor. A transfer * * * in respect of which the transferor reserves to himself a life income or interest shall be deemed to have been intended to take effect in possession or enjoyment at death * * *."

The majority opinion is based on this provision. It relies entirely on decisions from other jurisdictions. Few if any of them involve a fact situation comparable to the one disclosed here.

Under this record, read in the light of our own decisions, the transfer did not, could not and was not intended to "take effect in possession or enjoyment after [or at] the death of the grantor" and did not reserve to Mrs. Sayres "a life income or interest." Notwithstanding the language of the deed the evidence clearly establishes it was not a reservation of a life estate but was part of a contract which merely pledged a "life estate"

*as security* for the performance of the service which constituted the consideration or purchase price.

There is no factual dispute in the record. Attorney W. R. Fimmen, who drew the deed, testified: "She told me because of her condition of health she could not live alone and that * * * she wanted to give this farm to Frank Utt, with the understanding he was to take care of her as long as she lived and provide for her * * *. They had talked it over and that was the agreement."

He further testified the language concerning life estate was put into the deed entirely upon his advice "for her own protection pure and simple and (so that) even if Frank and his wife should die she would have the income from the farm *in that event.*" (Emphasis and parentheses supplied.)

In strict performance of the contract Mrs. Sayres was at once moved out to the farm. Her brother and his wife had lived on it as tenants for forty-five years. Thereafter, according to the trial court's well-supported findings, she exercised no "dominion; control or right" over the farm "and received no enjoyment or possession thereof or income therefrom. * * * Frank Utt went into immediate possession and full enjoyment * * * the same as if he owned it completely, and the life estate provision * * * in no way delayed or postponed such possession and enjoyment."

The court further found "Frank Utt paid no more rent to Mrs. Sayres nor did he pay her any part of the income * * *. Utt paid all the taxes, interest on the mortgage, insurance and upkeep * * * from his own funds. * * * He paid for electric wiring and * * * exercised complete dominion."

The proceeding was in probate and the undisputed testimony supported these findings. We are not at liberty to disregard them. They lead inevitably to the conclusion reached by the trial court that a life estate was not in fact *reserved,* but only *pledged* as security for performance of the contract. Mrs. Sayres was to be supported, *not from the income of the farm but regardless of such income.*

II. The admissibility of the extrinsic evidence showing the real transaction (evidenced only *in part* by the deed) is not, and cannot be, seriously questioned. Even as between the parties

themselves this court is committed from an early day to the doctrine: "The object for which a deed is given must be regarded as the true test of its character. If a deed is given as a security it is a mortgage, although an absolute conveyance in form." Hall v. Savill, 3 (G. Greene) Iowa 37, 40, 41, 54 Am. Dec. 485. See later cases: Kleinsorge v. Clark, 232 Iowa 313, 316, 4 N.W.2d 433; Olson v. Sievert, 238 Iowa 1316, 1319, 1320, 30 N.W.2d 157.

In Campbell v. Dearborn, 109 Mass. 130, 142, 12 Am. Rep. 671, 679, it is explained "* * * the parol evidence is admitted, not to vary, add to or contradict the writings, but to establish the fact of an inherent fault in the transaction or its consideration, which affords ground for avoiding the effect of the writings, by restricting their operation, or defeating them altogether. This is a general principle of evidence, well established and recognized both at law and in equity."

Perhaps the best statement of the basis of the rule (or exception to the parol-evidence rule) is suggested by the fact that a deed is unilateral, is given in performance and consummation of an antecedent contract and need not express all the terms thereof. As suggested by Judge Evans in Bilbo v. Ball, 194 Iowa 875, 892, 188 N.W. 753, 760: "This opens the door to the proof of such prior contract, whether it be written or oral." See Boyce v. Allen, 105 Iowa 249, 256, 74 N.W. 948.

In McAnnulty v. Seick, 59 Iowa 586, 590, 13 N.W. 743, 744, we said: "The weight of reason * * * is in favor of the rule that parol evidence is admissible in an action at law, as well as in equity, to show that a bill of sale absolute upon its face was intended as a mortgage."

By the same token a reservation of a life estate, absolute upon its face, may be shown to be inserted only as security. Surely, if Mrs. Sayres had in her lifetime attempted to assert ownership of a life estate, under this rule and in the light of this record her brother could have defended his full absolute title to the property as long as he performed the stipulated service which was the agreed consideration for the transfer.

And had he defaulted in such performance, or died before it was completed, Mrs. Sayres could only have asserted her lien in equity, and only to the extent necessary to make good the default,

just as she would have been compelled to do had she taken back a mortgage on the rents and profits.

III. Furthermore, the parol-evidence rule, even in cases where it could be invoked by a party to the transaction, is not available to a stranger to the contract. Kiser v. Morton Farmers Mut. Ins. Assn., 213 Iowa 18, 23, 237 N.W. 328. See cases cited 8 Iowa Digest (West) Evidence, Key No. 424. The decisions in In re Estate of Choate, 195 Iowa 715, 192 N.W. 857, In re Estate of Lamb v. Morrow, 140 Iowa 89, 117 N.W. 1118, 18 L. R. A., N.S., 226, and Brown v. Gulliford, 181 Iowa 897, 165 N.W. 182, support the contention that the State Tax Commission, in cases of this character, is a stranger to the transaction and not entitled to the benefit of the parol-evidence rule.

IV. The majority opinion in effect holds that the language of the deed is controlling (so far as concerns the liability to tax) regardless of whether it correctly states the real transaction. I cannot agree. The language of the statute does not purport to foreclose an investigation into the real character of the transaction. Where, as here, there is no slightest hint of ulterior purpose, I can see no reason for disregarding rules of law that would apply in any other kind of litigation.

The State tax authorities were entirely justified (by the language of the deed) in assuming a tax was due. But when evidence was adduced that would in any other case conclusively establish no life estate was in fact reserved, our duty to treat the State of Iowa the same as any other litigant seems clear. The tax is on the transfer—the actual transaction—not on the deed which is only some evidence of the transaction.

These parties were not attempted tax dodgers. The contract was faithfully carried out by this devoted brother and his wife just as decedent knew it would be. I think it clearly a case where no tax should be exacted. I would affirm.

WENNERSTRUM and GARFIELD, JJ., join in this dissent.