In the Matter of the ESTATE of Hannah ENGLISH, Deceased.

Dominic ENGLISH, Executor, Appellant,

v.

IOWA DEPARTMENT OF REVENUE, Appellee.

No. 55685.

Supreme Court of Iowa.

March 28, 1973.

Goodenow & Wright, Maquoketa, for appellant.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., and Gerald A. Kuehn, Asst. Atty. Gen., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP, and HARRIS, JJ.

UHLENHOPP, Justice.

This appeal involves the meaning of the expression, "transfer of property in respect of which the transferor reserves to himself a life income or interest," in the Iowa inheritance tax statute. Code 1973, § 450.-3(3).

On January 30, 1952, Hannah English conveyed a farm to Mae Carr. The deed recited so far as now relevant:

> KNOW ALL MEN BY THESE PRESENTS, that Hannah English, a widow . . . in consideration of the sum of One Dollar and upon the further consideration and agreement by the grantee herein, which shall be binding upon her heirs and assigns, to pay the grantor the sum of $600.00 per year during the said grantor's natural lifetime only, payable $300.00 November 1, 1952, and $300.00 December 31, 1952, and annually thereafter on the same dates of each succeeding year, in hand paid by Mae Carr . . . do hereby sell and convey unto the said Mae Carr the following described premises [describing the farm].

Mae Carr made the payments called for by the deed. Hannah English died on June 4, 1971, and her will was admitted to probate.

Thereafter, Dominic English, Executor of the Estate of Hannah English, Deceased, filed a five-paragraph application in the probate proceeding, asking the district court to determine a controversy between the executor and the Iowa Department of Revenue over inclusion of the farm in the estate for inheritance tax purposes. See Code 1973, § 450.59. He prayed that the court exclude the farm. Later he amended paragraph 4 of his application.

In paragraphs 1, 3, and 5 of the application, the executor alleged that he was the fiduciary of the estate, that the Department had determined the farm was includable, and that § 450.59 of the Code gave the district court jurisdiction to determine the controversy. In paragraph 2 he alleged:

> 2. That on December 30, 1952, decedent conveyed certain real estate to Mae Carr by warranty deed. That said warranty deed provided that Mae and her heirs and assigns pay the decedent the sum of $600.00 per year during her life as consideration for the conveyance. (See Exhibit "A" [the deed] attached hereto.) That payments were made as provided in said deed until decedent's death on June 4, 1971.

In paragraph 4 as amended, the executor alleged:

> 4. That this executor believes that this transfer was an absolute conveyance of title in fee simple to the grantee with consideration to be paid in installments during the grantor's lifetime and the real estate should not be included in the decedent's estate, and not subject to Iowa inheritance tax.

The Department filed answer. It admitted paragraphs 1, 3, and 5 of the application and denied paragraphs 2 and amended paragraph 4 which we have quoted. The Department concluded its answer with the prayer that the court find the real estate to be includable. The pleadings and their prayers thus squarely raised the question of whether the farm was or was not includable for inheritance tax.

The Department then filed a motion for adjudication of law points under rule 105, Rules of Civil Procedure. The motion asked for a legal determination as to paragraphs 2, 3, and 4 of the executor's application—which was all of the application except admitted paragraphs 1 and 5 that the executor had been appointed and that the court had jurisdiction. The motion recited that it was directed to the executor's whole cause of action and would dispose of that portion of the case and simplify trial of any remaining issues.

The trial court set the motion for hearing. The record recites that at the hearing

> both parties to this appeal agreed that the facts as set forth in paragraph 2 of appellant's [executor's] application for determination of inheritance tax would be the agreed and stipulated facts for the purposes of arguing and presenting the Iowa Department of Revenue's Motion for Adjudication of Law Points. Furthermore, it was also agreed to and stipulated to by the parties to this appeal that the appellant's Amendment to Application for Determination of Inheritance Tax [the executor's amended paragraph 4] should be considered part of the pleadings before the Court on the hearing for Motion for Adjudication of Law Points heard before A. L. Keck, Judge, Seventh Judicial District.

Thus all of the allegations of fact in the application were admitted in the pleadings or by stipulation for the purposes of the motion. The only part not admitted was amended paragraph 4—that the executor "believes" the transfer was an absolute conveyance on installment payments.

After the hearing, the trial court held for the Department. The court entered judgment that a portion of the value of the farm at death is includable—specifically, the same proportion as the annuity bears to

the income earned by the farm during the period of the annuity. The executor appealed.

The executor raises two issues in this court. The first is his claim on the merits—that the farm is not includable. The second is that the trial court should not have rendered judgment but should have allowed him to introduce evidence later on his amended paragraph 4—his belief that the conveyance is an absolute transfer on installment payments.

■ I. *Is Farm Includable?* The intent of inheritance tax statutes is to reach transfers linked to the death of decedents as opposed to complete, inter vivos transfers. Conveyancers have employed various devices to transfer property in ways which will bring the transaction within the inter vivos classification and yet permit the transferor to keep "strings" on the property until death. Legislatures, on the other hand, have enacted provisions to prevent such tax avoidance. Rottschaefer, Taxation of Transfers Taking Effect in Possession at Grantor's Death, 26 Iowa L.Rev. 514–515.

One of those provisions is the so-called possession or enjoyment clause—transfers made or intended to take effect in possession or enjoyment after the transferor's death. The Iowa legislature adopted such a clause and later strengthened it by a second sentence that a transfer of property in respect of which the transferor reserves a life "income" or "interest" is deemed to be under the possession or enjoyment clause. The provision is subsection 3 of § 450.3, Code 1973. Under that subsection, a tax is imposed upon the market value of property passing:

By deed, grant, sale, gift or transfer made or intended to take effect in possession or enjoyment after the death of the grantor or donor. A transfer of property in respect of which the transferor reserves to himself a life income or interest shall be deemed to have been intended to take effect in possession or enjoyment at death, provided, that if the transferor reserves to himself less than the entire income or interest, the transfer shall be deemed taxable thereunder only to the extent of a like proportion of the value of the property transferred.

In earlier days some courts took a legalistic view of possession or enjoyment clauses and similar legislative attempts to tighten inheritance tax laws, and construed transfers in tax cases in terms of the concepts of common-law conveyancing. In recent times, however, courts have taken a more realistic view and have looked at transfers in terms of the economic realities of the situation—whether the transferor has withheld from the transferee some economic benefits from the property until the transferor's death. See discourse by Justice Frankfurter for the Court in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604. This court has taken the modern realistic view. In re Sayres' Estate, 245 Iowa 132 at 140–141, 60 N.W.2d 120 at 124–125.

The case before us involves specifically a present transfer which imposes on the transferee, and on her heirs and assigns, an obligation to pay the transferor a life annuity. The question of inclusion for inheritance tax purposes may be considered under the first sentence of subsection 3 (the general possession or enjoyment provision) and also under the second sentence (the "life income or interest" provision). We find consideration of the first sentence unnecessary and therefore approach the question under the second sentence, as did the trial court. More particularly, we approach the question under the life "interest" clause of the second provision, for we doubt that Hannah English reserved "income" as such from the farm. Furthermore, we approach the word "interest" in terms of economic realities.

■ A number of jurisdictions have dealt with the problem of transfers result-

ing in annuities for transferors. See Annots. 49 A.L.R. 864, 874–888; 67 A.L.R. 1247, 1250–1254; 100 A.L.R. 1244, 1246–1254; 121 A.L.R. 359, 364–371; 155 A.L.R. 850, 855–868; 167 A.L.R. 438, 443–458. Cases on the extremes are not difficult. Thus a person may buy an annuity outright without inheritance tax consequences, and he may pay for the annuity with money or property—so long as he retains no strings for his lifetime on the money or property. E. g., Hirsh v. United States, 35 F.2d 982 (Ct.Cl.); Annot. 73 A.L.R.2d 157, 192. On the other hand, if a person in return for an annuity or other payments transfers property and retains an interest for life in that property as security for the payments or reserves life income from the property to make up or assure the payments, the life income or interest provision applies, whether the express or implied retention or reservation is in the transfer, in a separate instrument, or in parol. 42 Am.Jur.2d Inheritance, Estate & Gift Taxes § 109 at 310; 85 C.J.S. Taxation § 1147(3) at 927, 934. Between these extremes are the troublesome cases like the present one.

■ The governing factor is whether the transferor has, in a realistic economic sense, retained some lifetime hold *on the transferred property itself*, so that the transferee does not have the property free and clear of strings during the transferor's lifetime. The principle was stated thus in In re Hyde's Estate, 92 Cal.App.2d 6, 13–14, 206 P.2d 420, 425:

> The purpose of the inheritance tax statute is to tax successions occurring as the result of the death of the transferor, where such transferor, regardless of the form of the transaction, has enjoyed some of the economic benefits of the property until his death. Practically every state has statutes generally similar to those above-quoted which impose a tax on transfers intended to take effect in possession or enjoyment at or after the death of the transferor. Liability in

such cases does not turn upon the intention of the grantor, but upon the character of the interests created by the transfer. It can be safely said that where the grantor retains, directly or indirectly, expressly or impliedly, the economic benefits of the transferred property, the transaction is taxable, and that the courts will look through any device by which the grantor secures those benefits for himself. The question as to whether there has been a transfer of title *is not necessarily involved.* The question is, has the unlimited and unrestricted right of possession or enjoyment of the property transferred been postponed until the death of the transferor?

See also In re Honeyman, 98 N.J.Eq. 638, 643, 129 A. 393, 396 ("where a transfer is made, immediate as to title and possession, it is not taxable, unless there is some condition, reservation, or provision by which some interest in, or identifiably tied up with, *the very thing transferred* is reserved from the donee until the donor's death"—italics added); People v. Moses, 363 Ill. 423, 428–429, 2 N.E.2d 724, 726–727 ("If by a particular transfer the donor retains the fruits of the property during his life, the transfer is in lieu of a testamentary disposition and subject to the tax, but it is otherwise where the donor by the *bona fide* terms of his act is immediately and absolutely divested of all enjoyment of the property."); O'Byrne, Phelan & Wulf, Workbook for Iowa Estate Planners, § 11D2.1 (1966) ("A paramount criterion in drafting the private annuity transaction is to avoid a transfer of property whereby the transferee-payor's use, enjoyment and disposition of the property are in any way contingent or dependent upon the death of the transferor-annuitant.").

In this case the deed itself fastened upon Mae Carr the obligation to pay the annuity. Fort Dodge, D. M. & S. Ry. v. American Community Stores Corp., 256 Iowa 1344, 1353, 131 N.W.2d 515, 522 ("The voluntary acceptance of a deed poll binds the grantee to the performance of covenants

contained therein."). True, the annuity was not payable out of farm income, and the deed did not reserve a lien on the farm to secure payment. But we need not decide whether Mae Carr's obligation alone constituted a string on the property itself. The provision in the deed went beyond Mae Carr and made the obligation "binding upon her heirs and assigns."

■ One of the incidents of full ownership of property is the power to convey clear and unencumbered title, and we are satisfied that Mae Carr could not pass such title—the farm would be burdened by the annuity, an obligation woven into ownership of the farm itself for the lifetime and the protection of Hannah English. Mathis v. Mathis, 402 Ill. 60, 83 N.E.2d 270; Gallaher v. Herbert, 117 Ill. 160, 7 N.E. 511; Carder v. Hughett, 243 Ill.App. 170; Martin v. Martin, 44 Kan. 295, 24 P. 418. See also Blake v. Blake, 56 Wis. 392, 14 N.W. 173. As to assignees generally, see Peden v. Chicago, R. I. & P. Ry., 73 Iowa 328, 35 N.W. 424; 20 Am.Jur.2d Covenants, Conditions & Restrictions § 2 at 575, 576. Thus, Hannah English had an "interest" in the farm for life in a realistic sense. The trial court correctly so held. In re Madison's Estate, 26 Cal.2d 453, 159 P.2d 630; In re Hyde's Estate, 92 Cal. App.2d 6, 206 P.2d 420; People v. Moses, 363 Ill. 423, 2 N.E.2d 724; In re Honeyman, 98 N.J.Eq. 638, 129 A. 393; Fidelity Union Trust Co. v. Martin, 118 N.J.L. 277, 192 A. 74; Avery v. Walsh, 138 N.J.Eq. 80, 46 A.2d 912; In re Barber's Estate, 304 Pa. 235, 155 A. 565.

■ The trial court also held, and correctly, that only a portion of the value of the farm as of the death of Hannah English is includable for inheritance tax purposes by virtue of the proviso in the second sentence of § 450.3(3)—"if the transferor reserves to himself less than the entire income or interest, the transfer shall be deemed taxable thereunder only to the extent of a like proportion of the value of the property transferred." The court held

that the taxable portion is ascertained in the following way. First obtain the quotient of the annuity for the lifetime of Hannah English divided by the income the property actually earned during that period; then multiply the value of the farm as of the death of Hannah English by that quotient.

We believe the trial court's formula is correct except for the divisor. The standard should be objective, for under § 450.3 net market value is the objective. The farm might have good earning capacity but be in indolent hands, or vice versa. Rather than the income the property actually earned, the divisor should be the reasonable net earning capacity of the farm from the date of the transfer to the death of Hannah English.

We hold the farm is includable for inheritance tax, subject to the formula and modification we have stated.

■ II. *Hearing on Paragraph 4.* Despite a transfer which would otherwise render properly includable, a taxpayer may allege additional facts showing that the property is actually not taxable—as that subsequently the transferor surrendered his rights under the transfer. Brown v. Gulliford, 181 Iowa 897, 165 N.W. 182. Had the present application recited additional unadmitted facts, the motion would not dispose of legal issues raised by those additional facts, and those issues would remain for disposition. But paragraph 4 alleged no such facts. After alleging the facts in the previous paragraphs, the executor recited in paragraph 4 his belief that the transfer was absolute on installment payments. This amounted to his conclusion from the facts previously alleged. He had a right to allege his conclusion. Miller v. Scholte, 191 N.W.2d 773 (Iowa). But conclusions rise no higher than the facts alleged on which they are based, and they therefore raise no issues which those facts do not raise. 61 Am.Jur.2d Pleading § 15 at 466–467; 71 C.J.S. Pleading § 15 at 38, 40–41.

The present case affords a good example. Evidence by the executor at a hearing of his belief that the deed was absolute would be objectionable. Briney v. Tri-State Mut. Grain Dealers Fire Ins. Co., 254 Iowa 673, 117 N.W.2d 889; Johansen v. Davenport Bank & Trust Co., 242 Iowa 172, 46 N.W.2d 48 (witness' "understanding"). His belief was dependent upon the facts he previously alleged in the application, and the case thus stood or fell on those facts. Those facts were admitted at the hearing and were dispositive of the case. See In re Sayres' Estate, 245 Iowa 132, 139, 60 N.W.2d 120, 124.

We have carefully examined the proceedings at the hearing. They contain no hint that the parties considered issues existed other than those which were raised by the admitted facts alleged. The trial court's ruling clearly demonstrates that such was its understanding. That understanding is borne out by the parties' briefs which were before the trial court. The briefs dealt with the merits comprehensively. The executor's brief concluded with the prayer that the trial court find Hannah English retained no interest and that the court hold the farm should not be included. The Department prayed in its brief that the farm be held includable. The trial court's understanding is also borne out by the statement in the motion that the point of law was raised by "Paragraphs Two (2), three (3), *and four (4)* of the Executor's Application"; by the further statement in the motion that the point of law "raises a legal issue directed to *the whole* of the Executor's alleged cause of action"; and by the stipulation of the parties at the hearing that the executor's amended paragraph 4 was before the court and that the facts in paragraph 2 constituted the facts for the purposes of the motion. (Italics added.) Counsel were undoubtedly aware of the provision in rule 105 that a trial court enters a final order adjudicating the points determined.

The statement in the motion that adjudication of the point will dispose of that portion of the case and simplify trial of remaining issues does not contradict the trial court's understanding. The question of inclusion or exclusion of the farm was "that portion of the case." If the farm was held includable, issues still remained as to the value of the farm, the amount of the annuity, and the amount of farm income, under the formula in § 450.3(3)—issues to be determined by another hearing if not resolved by settlement.

We believe that the trial court was justified in its understanding that the whole issue of inclusion or exclusion was before it on the stipulated facts, and in rendering judgment based upon those facts. See Blackburn, Thirty Years of Motion Practice, 21 Drake L.Rev. 447, 465.

We cannot uphold either of the executor's contentions.

Modified and affirmed.